GULF CASUALTY CO. v. HUGHES et al.

No. 4638.

Court of Civil Appeals of Texas. Beaumont.

April 27, 1950.

Motions for Rehearing Overruled
May 31, 1950.

J. H. Sperry, Houston, J. E. Wheat, Woodville, for appellant.

B. L. Collins, Lufkin, Grover C. Lowe, Woodville, for appellees.

R. L. MURRAY, Justice.

This is a Workman's Compensation case.

Mrs. Vivian Hughes, appellee, widow of James W. Hughes, deceased, recovered judgment in the district court of Tyler County against Gulf Casualty Company, appellant, as the compensation insurance carrier for Gulf Refining Company. She sued as the surviving wife of James W. Hughes and also as guardian of her two minor children.

James W. Hughes, deceased, was an employee of Gulf Refining Company in Tyler County and as such worked in various occupations. In February, 1946, he worked three days as a painter's helper helping Joe Vanek, another Gulf employee, in painting the interior of a small residence. He became ill on February 22nd and returned to his home at the end of the day's work, complaining of headache, nausea, swelling and pain in various parts of his body and of tasting paint. On the 24th he again went back to work but his illness prevented him from working after the 24th of February. He spent about a week in Dr. Barclay's hospital in Tyler County and then went to a hospital in Beaumont. He stayed there two weeks and returned to his home. He remained home for two weeks and then went back to another hospital in Beaumont. He remained under treatment in the second hospital until he died on May 6, 1946. The evidence of the plaintiff in the trial court contains no medical testimony as to the nature of his aliments or the cause of his death. The plaintiff's evidence contained no medical testimony.

Mr. Hughes was alleged to have been injured February 22, 1946. He died May 6, 1946, and Mrs. Hughes' claim was filed before the Industrial Accident Board on April 5, 1948, 23 months after his death.

Mrs. Hughes consulted Mr. Austin Barnes, a Beaumont attorney, about her claim for compensation for her husband's death. After he had worked on the case for several months he advised her he could do nothing for her. She then consulted Mr. Thompson, a Nacogdoches attorney, who worked on her case for about six months and then advised her that there was nothing he could do about her case. She then employed Mr. B. L. Collins about March 27, 1948, who prepared and filed her claim for her on April 5, 1948.

The trial was to a jury and at the conclusion of the evidence of plaintiff, defendant moved the court for an instructed verdict, urging as grounds therefor that there was no evidence upon which any material issue could be submitted to the jury; that no injury was shown by the proof; that there was no "casual" connection shown between any injury and the death of James W. Hughes; that the evidence did not show that any lead was present in the paint or that the deceased was exposed to lead in the course of his employment; that good cause for failure to file notice and claim for compensation as required by law had neither been alleged or proved, and that the evidence showed nothing except that plaintiff was ignorant of the law with respect to filing notices and claims which does not constitute good cause; that the evidence did not show an injury to the physical structure of the body as required by law and failed to prove either injury or "casual" connection between any injury and death of Hughes. This motion was overruled by the court.

The evidence of the defendant was thereupon introduced, containing the testimony of Joe Vanek, a man whom the deceased

was helping paint the cottages of Gulf Refining Company, the label off the paint cans which showed contents of the paint, the medical testimony of Dr. Grady Bevil, who attended Mr. Hughes from April 4, 1946 to May 6, 1946, the time of his death. Vanek's testimony described in detail the painting operation, which was done with paint brushes. His testimony contains no description of any untoward incident in the painting job while Mr. Hughes was painting. He says that Hughes made no complaint to him while they were painting together, about the paint bothering him or about being ill.

The paint label purported to state the percentage of the various components of the paint and contained no statement of the presence of any lead in the paint.

Dr. Bevil's testimony was that Mr. Hughes' chief complaint was swelling of the feet, ankles and other portions of the body; this began on February 6, 1946, with swelling of the feet, ankles, hands and gradually the entire body, with distention of the abdomen; on February 26, 1946, he was hospitalized at Woodville; on February 28, 1946 he was hospitalized in St. Therese in Beaumont where the swelling disappeared and he went home; no complaint of pain in the back; no irritation while emptying the bladder; frequent urination; urine cloudy; no chills, aches or fever; he returned under Dr. Harlan April 4, 1946; he had no surgery and no injuries; no previous attacks; had the usual childhood diseases, a few colds; a light case of small pox in 1931; no cancer or tuberculosis. Dr. Bevil's diagnosis was glomerular nephritis. Glomerular nephritis was described as kidney damage caused by an infection. He testified it is not caused from painting. In the opinion of the witness Mr. Hughes did not have lead poisoning.

In the opinion of the witness, Mr. Hughes had had nephritis many months before he first saw him; the symptoms of nephritis and lead poisoning are entirely different and are not to be confused.

At the conclusion of the testimony the defendant, appellant here, filed another motion for instructed verdict, urging the six grounds contained in the first motion for instructed verdict and in addition thereto the further ground that the uncontradicted evidence in the case showed that cause of the death of James W. Hughes was glomerular nephritis and not lead poisoning. This motion was overruled by the court.

The case was submitted to the jury on special issues and the jury by its verdict found that the deceased, James W. Hughes, sustained an accidental injury on February 22, 1946; that such injury was suffered in the course of his employment and was a producing cause of his death; that Mrs. Hughes undertook to employ counsel to prosecute her claim for compensation within six months after the death of Mr. Hughes and that she continued to try to employ counsel from the time she began until she did in fact employ an attorney to prosecute her claim; that she was unable to employ counsel from the time she first undertook to do so until she employed B. L. Collins; that her inability to employ counsel was the cause of her failure to file claim for compensation during the period of time from May 6, 1946 and April 5, 1948; that her inability to employ counsel was good cause for the failure of Mrs. Hughes to file claim for compensation benefits during the period of time from May 6, 1946 to April 5, 1948; that the death of James W. Hughes was not caused solely by disease.

The defendant in the trial court, appellant here, filed its motion for judgment notwithstanding the verdict and therein asked that the findings of the jury be set aside and disregarded, which motion was overruled by the court.

The parties at the outset of the trial entered into a stipulation regarding various jurisdictional facts and also agreed and stipulated that the deceased had worked for his employer for substantially the whole of the year immediately preceding his death and that his average daily wage was $12, and further stipulated that if any compensation was due it was a case wherein manifest hardship and injustice would result if compensation were paid in weekly installments rather than in a lump sum.

On the stipulations and verdict of the jury the court entered judgment in favor

of Mrs. Hughes, individually and as guardian of her two children. Appellant thereupon filed its motion for a new trial, which was overruled by the court, and it has now perfected its appeal to this court for review.

The appellant presents its appeal by 10 Points of Error.

■ Appellant's first point is: "The trial court should have granted defendant's motion for instructed verdict where plaintiff alleged that deceased's death was caused by lead poisoning but did not prove, or attempt to prove that deceased ever came in contact with lead in any form, either from paint or from any other source during the course of his employment." Appellant's second point is: "The trial court should have granted defendant's motion for instructed verdict because by failing to prove that deceased came in contact with lead during the course of his employment, plaintiff failed to discharge the burden of proving a causal connection between the alleged injury and the death of deceased or that painting was a producing cause of the death and the jury could only speculate as to whether deceased died from lead poisoning." The appellant's argument under these two points is based solely on its assumption that the appellee's case rested entirely upon allegation and proof that Mr. Hughes' death was caused by lead poisoning. If such a premise were granted then the argument and conclusions of the appellant would be correct. There is no proof in the record that the deceased died because of lead poisoning or that he came in contact with lead during the course of his employment or that there was any lead to be found on the premises where he was employed with which he could have come in contact. The appellant is incorrect in its assumption that the appellee's case is wholly based on lead poisoning. The pertinent allegation by the appellee in her second amended petition, Paragraph III, is as follows:

"That on the 22nd day of February, 1946, the deceased, James W. Hughes, while in the course of his employment with his said employer sustained accidental personal injuries when he was caused to inhale a large amount of fumes and lead poisoning from paint which he was using to paint the inside of a small room on the premises of the said employer, the weather being cool and necessitating the keeping of the doors and windows of said room closed, and there being caused to accumulate inside said room a large quantity of paint fumes which were inhaled by deceased, James W. Hughes, as a natural result of which he later died on the 6th day of May, 1946." It is evident upon reading this portion of the petition that the appellee's case was not dependent solely upon making proof that the death of the deceased was caused by lead poisoning. To us it is plain that the plaintiffs below relied in their petition also on the allegation that the deceased inhaled a great quantity of paint fumes which produced his death. There is some evidence in support of this allegation which will be discussed more fully in our consideration of appellant's Point No. 6. It is sufficient to say that Points 1 and 2 of appellant do not correctly state the record, present no error and are therefore overruled.

■ Appellant's Points Nos. 3 and 4 in effect maintain that the trial court should have granted the appellant's motion for instructed verdict because no good cause for failure to file notice and claim before the Industrial Accident Board until more than two years after the date of the injury was alleged or proved. Numerous authorities are cited by the appellant, all of which were decided prior to the decision of the Supreme Court in Hawkins v. Safety Casualty Company, 146 Tex. 381, 207 S.W.2d 370. We regard the Hawkins case as controlling in the present controversy. While the term "good cause" is not defined by the statute, the test for its existence is that of ordinary prudence, that is, whether the claimant presented her claim with that degree of diligence that an ordinarily prudent person would have exercised under like circumstances. Consequently whether he has used that degree of diligence required is ordinarily a question of fact to be determined by the jury or the trier of facts. It may be determined against the claimant, as a matter of law, only when the evidence, construed most favorably for the claimant, admits no

other conclusion. Hawkins v. Safety Casualty Company, supra. In the instant case the evidence was that Mrs. Hughes consulted one attorney in Beaumont about her case and he studied the matter for some time and presumably made an investigation of it and advised her that he could do nothing for her. She then consulted a Nacogdoches attorney who also considered the matter for about six months and likewise advised her there was nothing he could do about the case. She then employed Mr. B. L. Collins, the attorney who prepared and filed her claim and filed and tried her lawsuit for her. The jury found that this constituted good cause · for failure to file her claim any earlier than she did. We find no authority directly in point but we agree with the view of the appellee that · Mrs. Hughes, unversed in the requirements of the law, acted as an ordinarily prudent person would have done under similar circumstances when advised by two lawyers in which she had confidence that they could not help her in her case. We cannot see, as a matter of law, that an ordinarily prudent person in like circumstances would have pursued any other course than that followed by the appellee. As to the point made by appellant that no good cause is shown for the delay in filing a claim after Mr. Collins accepted employment and up to the date when Mr. Collins filed her claim for her, we think this point was decided in the case of Hawkins v. Safety Casualty Company, supra, against the contention of the appellant. These Points are overruled.

 Appellant's Point 5 is that the verdict of the jury is not supported by the evidence because the uncontroverted evidence shows that deceased died of glomerular nephritis, or Bright's disease, an ailment to which deceased was no more susceptible by reason of his employment than any other member of the general public and there was no evidence that the deceased died from lead poisoning. Its 6th Point is that the trial court should have granted appellant's motion for instructed verdict because the evidence did not show that Hughes suffered any injury in the course of his employment. Points 5 and 6 must be sustained. As indicated in our discussion under Points 1 and 2, we attach no significance to the appellant's argument that there is no evidence that Hughes died of lead poisoning or came in contact with lead. We have examined the entire statement of facts in detail and find therein no satisfactory evidence that the deceased died from the effects of any injury suffered in the course of his employment. Of course, there is no evidence that the deceased died of lead poisoning and no evidence that he suffered from lead poisoning, or that he came in contact with lead or that lead had anything to do with his illness or death. There is some evidence, however, that paint fumes contributed to his illness, from which he died. We view this evidence as being unsatisfactory and insufficient to support the verdict of the jury and judgment of the court, but there is not a total absence of such evidence. If there were no such evidence the judgment would be reversed and rendered, but since there is some evidence, although that evidence is insufficient, the case is to be remanded to the district court for a new trial. As has been pointed out by the Supreme Court many times, while the district courts and Courts of Civil Appeals may and should set aside verdicts and judgments based on insufficient evidence, such judgments should be reversed and remanded and such courts should not render judgments contrary to the verdicts and judgments set aside, so long as there is some evidence in support thereof. We make the following résumé of all of plaintiff's evidence in this respect, which is taken verbatim from appellee's statement under her counter-points Nos. 1 and 2: "That for several years prior to February 22, 1946, James W. Hughes had worked for the Gulf Refining Company, Houston Pipe Line Division. He had performed various jobs for his employer such as rough necking, digging ditches, welding, painting, etc. He was 31 years of age at his death and during all said period so worked he was in good health, was never ill, worked for said employer daily and never lost any time because of sickness. That on February 22, 1946, he was helping paint a house belonging to his employer located at said employer's pump station in Tyler County, Texas and had been

so painting for several days theretofore. He would stand on the floor and paint the walls while one Vanek, a fellow employee, stood on a scaffold and painted the ceiling and upper part of the walls. Before painting, Hughes would use a steel brush to scrape off loose paint and dirt and also a broom for the same purpose. As they painted each day the paint fumes became more pronounced. On February 22, 1946, James W. Hughes became ill while painting and became nauseated and sick in his stomach and could taste paint. He complained of a headache, nausea, pains, swelling and tasting paint. He attempted to work on February 23 and 24 and stopped on the 24th, and went to a doctor on that day. His feet and legs were swollen and stiff; his lips were blue; he was in intense pain and complained of his legs hurting him very bad; he would become sick at his stomach upon mention of paint and everything he tried to eat tasted like paint. He was taken to Dr. Barclay's hospital on February 26th where he remained a week and was thereafter taken to St. Therese Hospital in Beaumont by ambulance where he remained two weeks. He then returned to his home for two weeks and thereafter was carried back to Beaumont to Hotel Dieu where he remained until his death on May 6, 1946. During his stay in the hospital in Beaumont he suffered with bad headaches, back aches, leg aches, swelling of the body generally, and with nausea. When he belched he belched up paint—he tasted like paint. After he got sick he complained of belching up paint. He was bloated; his feet and legs were swollen and kept getting worse all the time; his back and head hurt him; and he stated that he was going to have to change jobs on account of the paint fumes bothering him; he belched a good deal and complained of it tasting like paint. He did not work any on February 24, 1946, to May 6, 1946, the date of his death, and during said period of time he was either confined to his home or in a hospital." Accepting as true all of the above evidence in behalf of plaintiff in the trial court and discarding all other evidence contrary thereto, if any, we deem it insufficient to support the jury's finding that the deceased suffered any injury in the course of his employment while painting inside the small house. The only conclusion favorable to the appellee which can be drawn from the above evidence is that the deceased became sick while he was painting and that paint fumes may have had some bad effect upon his illness. The jury was not informed as to the affect which paint fumes can have and probably would have upon the human body. The jury was not informed by such evidence whether paint fumes could have caused the symptoms which were exhibited by the deceased. The findings of the jury that the deceased suffered an injury in the course of his employment and that such an injury was a producing cause of his death, ignore entirely the medical testimony given by Dr. Bevil, as introduced by the appellant. While medical testimony in such a case is not binding upon us in reviewing such a case, it is considered along with the lack of medical evidence in regard to such matters on the part of the appellee, and convinces us of the insufficiency of the appellee's evidence to sustain the verdict and judgment. When we consider all the evidence, including medical testimony of Dr. Bevil and the testimony of Vanek, we come to the inescapable conclusion that the jury's verdict that deceased suffered an injury in the course of his employment, and that such injury was a cause of his death is against the overwhelming weight of the evidence and cannot be permitted to stand.

The other four Points of Error of the appellant complain of the charge of the court. No. 7 complains of submitting in the charge a general issue as to an accidental injury, rather than an issue as to the specific injury of inhaling lead fumes, producing lead poisoning. Points Nos. 8 and 9 complain of the court's refusal to give special requested issues regarding lead poisoning. Point No. 10 complains of the court's action in refusing to submit a specially requested issue, inquiring whether the deceased's death was the result of an occupational disease. As indicated above in our opinion, we are not impressed by the appellant's theory that lead poisoning was the only point of issue in the case. We believe that none of the points in this latter

group present error. Points 7, 8 and 9 find no support in the record and they are overruled for that reason. As to the requested issue on occupational disease, we do not believe the evidence raised any issue as to whether the deceased was suffering from lead poisoning and the court did not err in refusing to submit this issue.

For the reasons given, the judgment of the trial court is reversed and remanded for a new trial.