**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,**

v.

**M. E. HANCOX, Appellee.**

**No. 5451.**

Court of Civil Appeals of Texas.

El Paso.

March 1, 1961.

Rehearing Denied March 15, 1961.

Edwards, Belk, Hunter & Kerr, El Paso, for appellant.

Huff, Splawn & Bowers, Lubbock, for appellee.

LANGDON, Chief Justice.

This is a case coming under the Workmen's Compensation Act of the State of Texas. Vernon's Annotated Civil Statutes, art. 8306 et seq. Appellee, Hancox, as plaintiff, sued appellant, Texas Employers' Insurance Association, as defendant, in the court below, alleging that he had received injuries on March 20, 1958, while in the employment of Robert E. McKee General Contractor, which resulted in total and permanent incapacity. It was further alleged that if plaintiff had not filed his claim with the Industrial Accident Board of Texas within six months from the date

of the accident, he had good cause for not doing so.

Defendant answered, among other things, that plaintiff did not file his claim for compensation within six months from the date of injury and had no good cause for not doing so.

At the close of all the evidence, defendant moved for an instructed verdict in its favor, which motion was overruled by the court. Thereafter, the case was submitted to the jury on special issues and a jury verdict was returned in favor of plaintiff. Defendant's motion for judgment non obstante veredicto having been overruled, judgment was entered in favor of plaintiff, and against defendant, for total and permanent disability. Defendant's motion for new trial was overruled, and this appeal followed.

Defendant's appeal is predicated upon only two points. By Point 1, it is contended that the trial court erred in overruling defendant's motion for instructed verdict because plaintiff failed, as a matter of law, to show good cause for his failure to file with the Industrial Accident Board a claim for compensation from the time of the date of his alleged injury up until the time he did file it. By Point 2, it is contended that the trial court erred in overruling defendant's motion for judgment non obstante veredicto because, under the pleadings and uncontradicted evidence, it became a duty of the trial court to direct a verdict in favor of defendant because the undisputed record shows that plaintiff did not file his claim for compensation with the Industrial Accident Board within six months from the date of his injuries, as required by Article 8307, section 4a, Revised Civil Statutes of Texas; and, as a matter of law, he has not shown good cause for his failure to do so; and, as a matter of law, he has not shown good cause for his continued failure to file his claim thereafter up until the time he did file it, which was on October 27, 1959, a period of one year, seven months and seven days after the date of his injuries.

Plaintiff's allegation of good cause, as set out in his pleadings, is as follows:

"Plaintiff would show that at the time that he received his accidental injury that the doctors who examined and or treated him advised him that he only had a minor back strain and that it would be all right in a short time and that he would have no disability whatsoever. That it was not until the plaintiff saw Dr. Nash in Dallas, Texas that he knew he had a serious injury and at that time he was operated on by Dr. Nash and of course was unable to do anything concerning the filing of his claim while recovering from the operation. That as soon as plaintiff was physically able to get out of bed that he employed an attorney in New Mexico and that the attorney after investigating plaintiff's claim ascertained that it was a Texas claim and at that time plaintiff contacted his attorneys of record and his claim was filed immediately."

In answer to special issues, the jury found that plaintiff sustained an accidental personal injury to his body on March 20, 1958, while working as an employee of Robert E. McKee, General Contractor; that such injury was sustained in the course of his employment and resulted in total incapacity commencing on the date of the injury, and that such total incapacity was permanent. The jury also found that the payment of compensation to plaintiff in weekly installments instead of a lump sum would result in manifest hardship and injustice to plaintiff, and that a reasonable, prudent man in the same position as plaintiff would have waited from the time of the injury until October 27, 1959 (when the claim was filed) to file claim for compensation with the Industrial Accident Board.

The record in this case reflects that plaintiff was a resident of Artesia, New Mexico, and was living there in March of 1958 when he was hired by Robert E. McKee, Contractor to drill some twenty-four-inch pillar holes for a new highway be-

tween Anthony, Texas, and Canutillo. Mr. McKee had an office in Artesia, New Mexico, as well as in El Paso, and the drilling rig that was to be used on the highway job was brought from Artesia to Texas. Defendant admitted that plaintiff received an accidental injury on March 20, 1958, while in the course of his employment with the above-named employer; that the accident and the alleged personal injuries, which are the basis of this claim, occurred in El Paso County, Texas. It was also admitted that the employer, Robert E. McKee, General Contractor, was given notice of the alleged accidental injury within thirty days from the date of such injury.

The injury was received as the result of a fall which occurred when plaintiff's foot slipped on a boulder while carrying or lifting a 200-pound "drive clamp". Plaintiff fell on his hips, and the heavy clamp, which he still held in his arms, landed in his lap. He suffered a severe pain across his lower hips and back and had difficulty getting back on his feet. He did get up, however, and resumed his work on the drilling rig. He felt better the next day and returned to work. On the Monday following the accident, he went to see a Dr. Giles, who examined and treated him at that time (about noon), and again that evening after plaintiff had finished his day's work. Plaintiff continued working, but saw the doctor every day, or "practically every evening" (some twenty times), until the rig work on the road was completed and he returned to his home in Artesia. Dr. Giles told plaintiff that he had a muscular strain in his back and a dislocation which would eventually get all right if he would wear a belt. After taking X-rays, the doctor told plaintiff that the X-rays showed no permanent injury and that, so far as he could see, it was still just a minor sprain or dislocation, and not to worry about it.

Plaintiff rested at his home in Artesia for possibly two weeks on account of his "back sprain", and then returned to El Paso to bring the rig back to Artesia. This completed his work for Robert E. McKee, General Contractor. Thereafter, he continued doing "drilling work" in the vicinity of Artesia, working for a number of different contractors, until June of 1959. During this period he went to a Dr. Trieski, in Artesia, but "only at such times that my hip and back would, the pain would get a little intense I would go down for treatment and I would get relief from it." Dr. Trieski, according to the testimony of plaintiff, seemed to think as Dr. Giles did, " * * * that as time went on the thing would clear up and he also told me to wear a belt * * *"

Plaintiff said that he believed what the two doctors had told him, and that he kept on working; but, in June, 1959, his legs began getting numb, his back was still sore, and his legs were not acting right. He decided that the treatment he was getting was not going to cure his condition. He then went to Dallas, to Dr. Tom Nash and Dr. Casey Patterson. This was on or about June 15, 1959, more than one year after the date of the accident, during which time no claim for compensation had been filed by plaintiff with the Industrial Accident Board. Plaintiff explained his failure to file such claim before seeing the doctors in Dallas:

"Well, I assumed that I had a muscular strain and eventually I would get over it and I hadn't felt like I had a serious enough injury to go anywhere else."

In Dallas, plaintiff was examined by Doctors Nash and Patterson, a myelogram was made, and other tests performed. According to plaintiff, the doctors told him that the tests failed to show any serious injury to the spine, but because plaintiff's right leg was shorter than the other, and was numb, they were of the opinion that plaintiff had an injury which was not showing up in their tests, and that an "exploratory operation" would have to be performed. An operation was performed on plaintiff's back at that time, which revealed a "ruptured disc". He was in the operating room

four hours, remained in the Methodist Hospital at Oak Cliff for nine days, and at his brother-in-law's house in Oak Cliff for one week, before returning to Artesia, arriving there about July 9th.

After returning to his home in Artesia following the operation in Dallas, plaintiff was unable to leave his home at all for a week, but began to get up and about again around July 14th, and was able to get out in the yard and ride up town. He had to make three trips back to Dallas for post-operative checkups by his doctors there. His first trip back to Dallas was made about one month after the operation, and was presumably around July 15th. A second trip was made about August 15th, and the third and final trip was made about September 15th. The evidence reflects that these round-trips to Dallas were about 1,400 miles each, and that plaintiff drove all, or part of the way on each of the three trips.

The exact date on which plaintiff first consulted a lawyer about filing a claim for compensation with the Industrial Accident Board (which admittedly was not done until after he had been operated on in Dallas and had returned to Artesia), is not revealed by the record. The only testimony bearing on this question is the following testimony elicited from plaintiff himself:

"Q. Were you able to do anything for a period of time after your operation? A. No, sir.

"Q. When you were finally able to get out and do anything did you or did you not inquire as to the possibility of having a claim under the Workmens Compensation Act? A. Yes, sir. I talked to an attorney in Artesia, Mr. D. D. Archer, and he told me that he would check on the compensation claim.

"Q. Now, did you see him as soon as you were able to get up and about after the operation? A. Yes, sir, I did.

"Q. And after checking it out what did you find out from Mr. Archer? A. He told me that I was working in Texas for a Texas employer he couldn't handle my case, that I would have to get a Texas attorney to check into it for me.

"Q. And how soon after that did you do that and see that you had a claim filed? A. It was almost immediately after, I wouldn't say immediately either because I was still having trouble getting around, riding in a car.

"Q. All right. Tell us whether or not as soon as you felt like you were able to travel and find out about your claim and you were able to file a claim did you come to Texas and do that? A. Yes, sir, I came to Lubbock, Texas."

Thereafter, a claim was filed by plaintiff's Lubbock attorneys with the Industrial Accident Board at Austin, on October 27, 1959.

■ The law in Texas is well settled that, when a claim for compensation benefits is not filed within the statutory period of six months (Article 8307, section 4a, Vernon's Annotated Civil Statutes of Texas), good cause for the failure to file the claim must continue to the date when the same is actually filed. Consolidated Casualty Ins. Co. v. Perkins, 154 Tex. 424, 279 S.W.2d 299; Petroleum Casualty Co. v. Dean, 132 Tex. 320, 122 S.W.2d 1053; Williamson v. Texas Indemnity Ins. Co., 127 Tex. 71, 90 S.W.2d 1088.

■ The plaintiff in this case contends that he did not know the serious nature of his injury until after he had consulted with his doctors in Dallas on or about June 15, 1959. Prior to that time he had consulted two other doctors, each of whom had examined and treated him, and had assured him that his injury was not serious and constituted no more than a minor muscular strain, or dislocation, that would heal in time. The evidence is clear that plaintiff

relied on the advice of his doctors, and that he himself believed such injury to be trivial, for he continued working until about June, 1959, when his back commenced giving him more trouble, and numbness developed in his leg. At Dallas, even the doctors there were unable to ascertain the cause of his trouble by means of ordinary examination, or by the special tests that were employed to diagnose his condition. An exploratory operation on his back was required for the diagnosis. Plaintiff, under the facts of this case, we believe, unquestionably had good cause for failing to file his claim for compensation up to and including June 15, 1959, because of his good faith belief that his injury was trivial, and not serious.

A more difficult question is raised as to whether good cause continued at all times to exist, from the date of June 15, 1959 (when he discovered that his injury was serious), until October 27, 1959, when his claim for compensation was actually filed with the Industrial Accident Board.

The proof shows that plaintiff was in the hospital for nine days after the operation; at his brother-in-law's house in Oak Cliff for a week thereafter, before he was able to return to Artesia; that his wife then drove him back to Artesia (stopping overnight in Brownfield), and that he rode in the back seat; that he stayed in his house for a week without getting out at all; that he went out in the yard and rode up town about July 14th; that he made another round-trip to Dallas about July 15th (four weeks after the date of his operation), for a medical checkup by his doctors; and, thereafter, two other round-trips to Dallas at intervals of about every four weeks (presumably August 15th and September 15th, 1959), for further medical checkups. He testified that, for about thirty days following his return to Artesia, he spent most of his time around the house, although after July 14th, he was able to get about with a cane and could and did go up town.

The evidence reflects that plaintiff was confronted with the medical necessity of making monthly round-trips to Dallas, for a period of some three months immediately following his operation, for post-operative checkups. During this period (June 15th to September 15, 1959), he attempted no work; he was still—at least technically— under the care of his Dallas physicians; he continued to suffer pain; and, although the trips to Dallas were made by automobile, and he admittedly drove all, or part of the way on each of the three round-trips (a distance of 4,200 miles in all), he continued to have trouble getting around and riding in a car.

Defendant argues that while plaintiff might have had good cause for failing to file his claim for compensation prior to the time he first saw the Dallas doctors on June 15th and discovered that his injury was serious, that such good cause, if any he had, terminated on that date. Defendant contends that the burden is on plaintiff to show continuous good cause for failure to file his claim after the expiration of the statutory six months period, and that good cause, as a matter of law, was not shown by plaintiff to have continuously existed down to the date that such claim was actually filed with the Industrial Accident Board. Defendant asserts that if plaintiff was well and strong enough to have made three round-trips to Dallas after his operation, he could have stopped in any of the numerous cities through which he passed, including the city of Lubbock, where his attorneys of record resided, and have employed an attorney to file his claim; or, that plaintiff himself might, at any time during this period, have written the Industrial Accident Board and reported his own claim.

We concede that plaintiff might have done any of the things suggested by defendant; but we do not agree that, because he failed to do so, he thus failed, as a matter of law, to show good cause for not having filed his claim within six months from the date of his injury.

In our opinion, the evidence presented by this record is sufficient to raise a fact

question on the issue of good cause, and this is an issue for the jury to decide. The jury's answer to the issues was favorable to plaintiff, and is supported by adequate pleadings and proof.

The three months' period following his operation in Dallas was a period of convalescence for plaintiff. His trips to Dallas during this time were made for medical reasons and, presumably, were a medical necessity. Such trips were long, and were bound to have been fatiguing, even upon a person in good health. It may be assumed that plaintiff's greatest concern during this period was to recover his health, for the record does not reflect, nor is it anywhere suggested, that plaintiff did anything at all during this period other than make the trips to Dallas to see his doctors, or that he was able to do anything more than to make such trips; except that, after July 14th, he was able to get around with the aid of a cane, go out into the yard, and ride up town, but still had trouble getting around and riding in a car.

Plaintiff testified that he talked to his attorney in Artesia about filing his claim for compensation as soon as he was able to get up and about after the operation. Plaintiff's claim was somewhat unusual. The injury had occurred more than a year before; plaintiff was hired in New Mexico; his employer had an office in New Mexico, and was evidently engaged in business in both New Mexico and Texas. While the accident admittedly occurred in Texas, this fact, also, had to be ascertained, for the proof showed that the accident occurred somewhere between Anthony and Canutillo, not more than a few miles from the Texas-New Mexico state line. These factors, and others in evidence, warranted and required a reasonable time for investigation on the part of plaintiff's New Mexico attorney before it could be determined that plaintiff's claim was a Texas case under the Texas Workmen's Compensation Act, and that it should be handled by Texas attorneys.

After being advised by his New Mexico attorney, and as soon thereafter as he felt able to travel, plaintiff made a trip to Lubbock and hired the firm of attorneys who thereafter filed his claim for compensation with the Industrial Accident Board at Austin, Texas.

We have carefully considered the cases cited by defendant wherein the courts have held that the proof failed, as a matter of law, to establish good cause, and those cases in which the court held that the facts alleged failed, as a matter of law, to constitute good cause for plaintiff's failure to file his claim for compensation within six months of the date of injury. Each of the cases cited turned on facts peculiar to the case then under consideration; and, without discussing them in detail, we say that those cases are distinguishable on their facts from the case now before us.

Each of plaintiff's attorneys were, in turn, entitled to a reasonable time in which to investigate the case before preparing and filing the claim. There is no showing that either of them acted unreasonably or negligently, or that either took more time than was reasonably necessary, under the circumstances, to do the work required to be done. Texas Employers Ins. Ass'n v. McDonald, Tex.Civ.App., 238 S.W.2d 817; Gulf Casualty Co. v. Hughes, Tex.Civ.App., 230 S.W.2d 293.

We find no inconsistency in plaintiff's testimony to the effect that he made three round-trips to Dallas for medical purposes, and his testimony to the effect that, after being advised by his New Mexico attorney to see a Texas lawyer, he did not go immediately, because he was still having trouble getting around and riding in a car, but did go as soon as he felt he was able to travel and find out about his claim.

We assume from the record that appellant was required, by reason of medical considerations, to make the trips to Dallas, whether he felt like it or not. Obviously, his condition was not so bad as to prevent him from making these trips. The ques-

tion, then, seems to be—since his physical condition was not so bad as to prevent him from traveling at all, was it, then, sufficiently bad to constitute good cause for him to wait as long as he did before going to Texas to find an attorney to handle his claim? We believe such matters present fact questions, and that we should not hold, as a matter of law, that a reasonable, prudent man, in the same position as plaintiff, would have done otherwise, or that plaintiff's physical condition at the time was not such as to constitute good cause for failing to file his claim until the time that it was filed.

Finding no error, each of appellant's points are overruled, and the judgment of the trial court is affirmed.