**CONSOLIDATED MUTUAL INSURANCE COMPANY, Appellant,**

v.

**Linda Kathryn MORONKO et vir, Appellees.**

**No. 15228.**

Court of Civil Appeals of Texas.

Houston (1st Dist.).

Feb. 29, 1968.

Rehearing Denied March 28, 1968.

Zimmerman, Jones, Burdeaux & Kiefer, Stephen N. Zimmerman, Harry S. Jones, Houston, for appellant.

Schulman & Powell, William R. Powell, Houston, for appellees.

BELL, Chief Justice.

This is a workmen's compensation case in which, after a jury trial, the court, based on the jury verdict, rendered judgment in favor of appellees for total permanent incapacity incurred by Mrs. Moronko. She received her injuries while working as a saleslady at J. J. Newberry's on May 25, 1965, when she fell down an escalator which stopped moving while she was on it. She did not file her claim with the Industrial Accident Board until January 12, 1966. The six months' period for filing the claim expired November 25, 1965. The jury found good cause for not filing sooner, as we shall hereafter notice specifically.

Appellant for reversal asserts there was no evidence to support the jury's answers to Special Issues 11, 12 and 13 finding good cause. Also it asserts the answers to such issues are contrary to the overwhelming weight and preponderance of the evidence. Also, appellant contends the same with respect to the answer of the jury to Special Issue No. 1 finding total incapacity and to the answer to Special Issue No. 3 finding such incapacity was permanent.

Special Issue No. 9 inquired whether appellant's agent, Mr. Hall, represented to Mrs. Moronko that "she * * * should not worry about a thing because the insurance company would take care of everything." Special Issue No. 10 inquired whether Mrs. Moronko relied upon such representation. Affirmative answers were made to these issues. Special Issue No. 11 read in part as follows: "Do you find * * * that Plaintiff's reliance * * * constituted good cause * * * for Plaintiff's failure to file her claim with the Industrial Accident Board *up until the same was filed?*" (Emphasis ours unless otherwise indicated) The jury answered affirmatively.

Special Issue No. 12 inquired whether the defendant by paying weekly benefits and all medical bills from May 25, 1965, to December 14, 1965, led plaintiff to believe that her claim had been filed. The jury answered affirmatively. Special Issue No. 13 read in part as follows: "Do you find * * * that Plaintiff's belief * * * constituted good cause * * * for failure to file her claim with the Industrial Accident Board up until the time the same was filed?" The jury answered affirmatively.

Appellant's points of error assert error as to Special Issues 11, 12 and 13, that the court committed error in overruling its motion for instructed verdict, in submitting the issues and in refusing to disregard the answer to each, for the reason there was no evidence to support an affirmative answer.

It is undisputed that Mrs. Moronko received an injury and was immediately taken from the store where she was working to see and be treated by Dr. McCorkle. The employer and appellant, its compensation carrier, had actual notice of the injury. Appellant began paying weekly benefits on

June 2, 1965, and continued same without interruption until December 14, 1965. During all of this time, and continuously since then, she has been off from work and has been under treatment for her injuries. Too, appellant paid all medical expenses during the same period and also paid some medical expense after December 14, the last payment being to Dr. McCorkle on February 21, 1966. The medical payments after December 14 covered treatment by Dr. McCorkle both prior to December 14 and thereafter. Since that time, appellant has refused to pay any medical expense. All medical reports were sent by Dr. McCorkle to appellant until it stopped paying medical expense.

Appellant's agent, Mr. Hall, testified payments of compensation and medical expense were stopped because of the report of their Drs. Parish and Nowlin that Mrs. Moronko had recovered and was able to return to work. There is a dispute in the evidence at the time of trial as to whether she had recovered, as we will discuss later in connection with appellant's contention with regard to the jury's finding of total permanent disability.

As bearing on the issue of good cause, apart from the undisputed facts above stated with regard to payment of compensation and medical bills, there is testimony of Mrs. Moronko concerning a representation made to her by Mr. Hall that she need not worry one bit, that everything was being taken care of. Mrs. Moronko testified that during the time she was receiving payments she had some conversation with Mr. Hall. She testified:

"Well *one time* it (one of the checks) was late * * * and I didn't call the very next day, but he said that the secretary was off but it would be in the mail. So I did receive it later, but *then there was the next time* I didn't receive it and that was on a Thursday * * * every Thursday I would get the check * * * Monday I didn't get it, so I called him

Tuesday and he said he had stopped sending me those checks."

Then followed these questions and answers:

Q  Approximately when was that, now?

A  Well, that was December.

Q  In December of '65?

A  In, yes, sir, December.

Q  Now in this *preceding* conversation did Mr. Hall make any representation to you about your claim being taken care of or anything?

A  Oh, yes, sir. He told us *everything was being taken care of and for us not to worry one bit.*

Q  That was the time your check was late and you called him?

A  *You mean the first time?*

Q  Yes, ma'am.

A  Yes. He always said that, *"Don't worry, everything is taken care of."*

Q  * * * I would like for you to tell me exactly what Mr. Hall related to you in that regard, in his own words as best you can.

Q  The *first* telephone conversation.

A  About the first check being late?

Q  *Not the check being late. The other representation you said he made to you at that time about your claim.*

A  * * * I don't quite understand that.

Q  * * * I thought you just said at the time of your *first* conversation * * when the check was late that he mentioned to you that your claim was being taken care of.

  *    *    *    *    *    *

A  Well, he said, "Just don't worry, Mrs. Moronko, everything is being taken care of *and* your check will be in the mail.

\* \* \* \* \* \*

Q Based on those representations \* \* did you believe your claim had been filed?

A Yes. I \* \* \* *surely I thought that was filed.*

Q Did you \* \* \*

A *I didn't think I had to file it.*

Q Did you rely on those representations?

A Yes, sir.

Q Now in your *second* conversation with him when he told you that they were stopping your compensation, you would never get any more checks \* \* \*

A That's what he said.

Q Now, when was it that you found out that the insurance company did not file your claim with the Industrial Accident Board?

An objection that the question implied a duty on the part of the insurer was sustained.

Following the above, Mrs. Moronko testified her husband wrote the Industrial Accident Board on December 7, 1965, for her. This was answered by the Board December 15. The letter to the Board gave the name and address of both the appellant and the employer, related rather fully the time, circumstances and nature of the injuries and stated that "so far" the insurance company (naming appellant) had been paying compensation and medical bills. Too, it recited the carrier's agent had visited them and wanted to settle for $450.00 but they said "no" because Mrs. Moronko was still going to the doctor and might be permanently injured. Inquiry was then made if there was "a time limit on her $30.00 per week." Too, it stated they hadn't yet received a notification of the Board or a Board number in the case. The letter was received by the Board December 8.

On December 15, the Board replied by a letter enclosing the "Board's Standard Notice of Injury and Claim for Compensation" form. The letter stated when the form was completed and returned the Board would be further able to assist Mrs. Moronko. It further stated that in filing the claim "include a separate signed statement setting forth the reasons for failure to file Notice of Injury and Claim \* \* \* within six months of the date of the injury." The last paragraph of the letter stated a carbon of the letter was being sent to Newberry's and by such act the Board was requesting Newberry's to file "Employer's First Report of Injury" with the Board. At this point we note that Mr. Hall testified that the insurer always had the employer to file the first report with it and not the Board. Too, he testified the carrier did not send this report to the Board unless and until a dispute arose with the claimant. Too, he acknowledged knowing that when a first report of injury was sent to the Board, the Board sent its claim forms to the injured employee. The report of injury to Mrs. Moronko was sent to the Board by appellant on December 16, 1965, after the expiration of six months from the date of the injury. We note that Article 8307, Section 7, requires the employer to file the report with the Board within 8 days after the injury.

Mr. Hall was asked the following questions and gave the following answers:

Q \* \* \* You, of course, have been sitting here \* \* \* and you heard Mrs. Moronko testify as to her conversations with you. Do you recall some telephone conversations with them?

A Yes, sir.

Q *Do you deny that you told her that you would take care of everything, and for her not to worry about it?*

A No, sir.

Mrs. Moronko testified that when they got the letter from the Board they didn't

know how to answer so they decided to hire a lawyer to help them answer. She attempted to get in touch with the lawyer who ultimately did accept employment. She contacted him immediately, but he was unable to see her until a later date. He was busy on other matters and he told her to contact him at a later date. In January, 1966, they contacted him and signed a contract of employment January 11. She told the lawyer her distress, but he was busy and the Christmas season was on them and the lawyer said he would take care of it later. She thought they had to get a lawyer to help them.

The attorney testified Mrs. Moronko's brother had been a client of his about ten years. The brother called him and told him his sister felt she was in need of legal services. He told the brother to have the sister call so he could discuss the matter and determine the action required. This was about December 17, 18 or 19, or possibly the 20th; just a short time before Christmas. She told him about the letter from the Board. He was working on several matters and particularly a securities matter that made it impossible to attend to the matter just at that time. Just as soon as the securities matter was finished he called her and set up an appointment. In her original conversation she gave him some information about her accident. She told him of the Board's letter and possibly read it to him. He got the name of the doctor and thinks he called him. He was not real positive but he may well have called the Board. He was getting what information he could from the doctor so that when he was able to see Mrs. Moronko he could go forward from that point. January 11, 1966 was the first time he was able to see her. He then obtained further information from Mrs. Moronko, including the reasons for not filing the claim. On this day the formal claim form was filled out and mailed to the Board in Austin. He was not formally employed as her attorney until this date.

■ If a claimant does not file a claim within six months after the date of the in-

jury, she must show good cause why it was not done. The burden of proof is on the claimant to establish good cause and that it continued until the date it was actually filed. Texas Employers' Insurance Ass'n v. Brantley, Sup., 402 S.W.2d 140. Ordinarily the test of good cause is that of ordinary prudence. Whether a claimant used the diligence of an ordinarily prudent person is usually a question of fact though the evidence in a particular case may be such as to show the absence of good cause as a matter of law. Each case must rest on its own facts. Hawkins v. Safety Casualty Co., 146 Tex. 381, 207 S.W.2d 370.

■ Construction of the record is to be liberally made in favor of the injured employee so as to effect the purposes of the Workmen's Compensation Act.

■ As the case reaches us, the parties have treated the formal claim that was filed January 12, 1966, as being the claim filed by appellee, and apparently it was tried below on that theory. We have above noticed, however, the letter written to the Board for Mrs. Moronko by her husband dated December 7, 1965. To us it contains all of the information contemplated by law to be included in a claim. While it makes inquiry as to the length of time that payments continue, it states appellant has proposed a settlement of $450.00 which has been turned down because Mrs. Moronko is still under treatment and she might be permanently injured. We know of no particular form that is required. We know of no legal requirement that forms furnished by the Board be used. See Booth v. Texas Employers' Insurance Ass'n, 132 Tex. 237, 123 S.W.2d 322, opinion adopted; Western Casualty Co. v. De Leon, Tex.Civ.App., 148 S.W.2d 446, dism., judgment correct. We are unable here to consider it as a claim because the letter was not introduced before the court to establish jurisdiction, but only its date was introduced. The claimant, where the timely filing of a claim is in issue, must by evidence establish the claim. Casualty Reciprocal Ex-

change v. Stephens, Tex.Com.App., 45 S.W. 2d 143.

We call attention to this because our disposition of this appeal requires another trial. We feel unable, however, to consider this letter as controlling here because it was filed more than six months after the injury and the issues submitted to the jury related, when we consider the development of the evidence and the briefs here, to the formal claim filed January 12. We cannot hold as a matter of law that the evidence would show good cause for not filing prior to December 8.

■ We have recited the evidence concerning Mrs. Moronko's reliance upon the representation of Mr. Hall that everything was being taken care of. Such has been held to constitute good cause, when found by the jury to amount to such. Trinity Universal Insurance Co. v. Christian, Tex. Civ.App., 289 S.W.2d 656, n. r. e. However, the difficulty here is that we are unable from the testimony to reasonably infer that the representations took place during the six months' period. Further, we are unable to infer that her reliance continued until the formal claim was filed January 12, because the evidence shows that around December 7, Mr. Hall told her they would make no more payments of compensation. We must, therefore, in the state of the record, hold there is no evidence of probative force to support the jury's answer to Special Issue No. 11.

■ There is some evidence of probative force, and it is sufficient, to support the jury's finding to Special Issue No. 12, that appellant by paying the weekly benefits and medical payments from May 26, 1965 to December 14, 1965 led appellee to believe her claim had been filed. It has been held that such finding will support a jury's finding of good cause. Fidelity and Casualty Co. of New York v. Ener, Tex.Civ.App., 97 S.W.2d 267, n. w. h. See also Texas Employers' Ins. Association v. McDonald, Tex.Civ.App., 238 S.W.2d 817, writ ref.; and Texas Employers' Ins. Ass'n v. Crain, Tex.Civ.App., 259 S.W.2d 905, n. r. e.

■ However, we are of the view that there was no evidence of probative force to the answer to Special Issue No. 13, that this constituted good cause up until the claim was actually filed, keeping in mind what we have above noted concerning the theory of the date of January 12. The reason for our holding is that when the Board sent Mrs. Moronko a form of claim, she knew it was being contended no claim had been filed and also compensation payments had been stopped.

There is the period of time between December 15 and January 11 that was material on the issue of good cause for delay in filing. No issues were submitted covering this period. We have noticed the evidence about her seeking the attorney's advice and his investigation prior to employment and his action after employment. In the light of another trial, the possibility of this continuing to be material leads us to call this to the parties' attention. We feel the evidence in the record before us raises an issue of good cause for this period of time. Gulf Casualty Co. v. Hughes, Tex.Civ.App., 230 S.W.2d 293, n. w. h.

■ We have read the complete statement of facts and find evidence of probative force to support the jury's finding of total permanent disability. We also find such not to be against the overwhelming weight and preponderance of the evidence.

Since we have found error as above stated and since it is evident that the case was not fully developed, we reverse and remand the case for retrial.