## TEXAS EMPLOYERS' INS. ASS'N v. McDONALD.
### No. 9954.

Court of Civil Appeals of Texas. Austin.
March 21, 1951.

Rehearing Denied April 11, 1951.

McMahon, Springer, Smart & Walter by Esco Walter, Abilene, for appellant.

Scott Snodgrass, San Angelo, for appellee.

GRAY, Justice.

This is a workmen's compensation case. Appellee, Sam J. McDonald, was the employee of Baker and Taylor Drilling Company, and appellant, Texas Employers' Insurance Association, was the insurance carrier.

As found by the jury, appellee sustained an accidental injury on or about June 18, 1949, while in the course of his employment with Baker and Taylor Drilling Company in Coke County, by reason of which he suffered total and permanent disability. Except to the extent that the points herein discussed may prevent giving them effect, these findings are not challenged. By its answer to issue 14 the jury found that good cause existed for appellee not filing his claim for compensation with the Industrial Accident Board until the same was filed (April 1950), and by its answer to issue 15, that appellee filed a claim for compensation with the Board within six months after June 18, 1949.

A photostatic copy of appellee's claim for compensation was introduced in evidence. It shows the claim was dated April 1, 1950, however, the stamped date of its receipt by the Board is obscured, it shows the claim was received in April 1950, but the exact day is not clear.

Upon the verdict of the jury, the trial court rendered judgment for appellee.

As briefed by appellant, the points presented relate to: (1) the jury's finding in answer to issue 14; (2) the jury's finding in answer to issue 15; and (3) the admission of evidence relative to individuals acting as agents or adjusters for appellant.

Appellee alleged that he filed his claim for compensation with the Industrial Accident Board within six months after he sustained the injury complained of, and, in the alternative, alleged that he had good cause for not filing his claim within six months after he sustained injury. Appellant filed its denial under oath denying these allegations.

It is the well established rule in this State that the existence, or nonexistence, of good cause for the failure to file a claim for workmen's compensation within six months after the injury is a question of fact to be determined by the application of the rule of ordinary prudence to the facts; that is, did the injured employee prosecute his claim with the degree of diligence that an ordinary prudent person would have exercised under the same or similar circumstances. It becomes a question of law only when the evidence, construed most favorably for the injured employee, admits no other reasonable conclusion except that good cause did not exist. Watson v. Texas Indemnity Ins. Co., 147 Tex. 40, 210 S.W. 2d 989; Texas Indemnity Ins. Co. v. Cook, Tex.Civ.App., 87 S.W.2d 830, Er.Ref.

The trial court gave the jury a definition of good cause wherein he applied the rule of ordinary prudence.

Appellee filed a notice of injury on July 18, 1949, the form for which was obtained at the drilling rig of his employer. On cross-examination appellee testified:

"Q. Did you get the form from the Industrial Accident Board? A. They sent me some back after I notified them.

"Q. Did you get a form of claim? A. How do you mean?

"Q. Like this last thing you filed in April of 1950. A. I am not clear on how you mean it. I just wrote the Industrial Board of my injury at the time of injury and they did send me back some papers.

"Q. Well, did you fill them all out? A. I filled them out; one with the Industrial Board and one to Baker & Taylor and one to Texas Employers.

"Q. When did you find out you hadn't filed a claim? A. Hadn't filed?

"Q. Yes. A. Thought I filed it all the time.

"Q. You thought you filed it all the time? A. I thought when I wrote them; as long as they was paying me I thought that was all.

"Q. That is what you thought? A. Yes, sir."

After notice of his injury, appellant paid appellee monthly payments until February 10, 1950, with the following explanation:

"Q. * * * They began to pay you in July and paid you—the first payment paid you for four weeks? A. The first time possibly they did, I wouldn't be positive on that.

"Q. And they paid you clear down through that last check, the one that I offered? A. There was one time in a period through there I didn't get my check and I wrote the Industrial Board and I got back a check for $75.00, I believe."

During the time that appellee was receiving payments, persons acting as agents and adjusters for appellant (the testimony relating to the identity of these persons will be later noticed) talked with appellee about his physical condition, his compensation and how he was getting along. Soon after he received the check on February 10, 1950, appellee went to appellant's office in San Angelo and talked to Mr. Conley as to what would be done about his compensation, and said: "Well, he said he wanted to make a lump sum settlement with me and wanted me to try to make—what I would accept; and I told him the amount I would accept, and he said they couldn't do that, * * *." In a matter of "a day or two or perhaps hours" he went to see his attorney. Appellee said it was because of the payments he received, the negotiations with appellant "and talks back and forth" that he did not sooner talk with an attorney about his claim. Appellee's attorney testified that appellee first talked to him as a lawyer just after appellant stopped making payments the last time, and said:

"He told me then they had just stopped his check or had stopped his compensation and had told him they weren't going to start it again, that any further payment they were going to make would be in the form of a lump sum settlement. About that time one of the men from the office there at San Angelo, one of the adjusters, called me and asked me about his compensation and what could be. done about it; and I told him, in effect, that I was going to send Sam back down there and let them try to settle themselves, so he wouldn't be out a lawyer's fee on it, and whatever they did to suit him would be all right. And he said, 'All right'; then it was a few days or a week or so, some appreciable interval of time, before Sam came back and reported that he had been down there and talked and told me, in effect, they hadn't gotten anywhere.

*    *    *    *    *    *

"In all events I called the office after that and I said in effect, 'It looks like you are going to have trouble ever agreeing on a lump sum settlement with Sam on this deal, go on and pay him his weekly compensation for awhile and see how he gets along and if he gets all right you can wind it up somewhere down the line.' The man there said he didn't think they would agree to that but he would get the final say on it and let me know. And then within some other period of time, now I can't remember how long, these things were, but it was over a period of five or six weeks or more all of that happened, he finally called me one day and said, 'We are not going to do anything other than making a proposition to wind it up by lump sum settlement, not going to start back on the weekly payments at all; we want to clean it up and end it.' And when he said that, when he told me that I got a hold of Sam that same day and asked him just what he had done about his claim down in Austin; he said he didn't know for sure, and immediately I got busy and got myself some blanks and we filed that claim just as soon as it could be sent to Austin after that last word from the San Angelo office."

■ It is true that the good cause which will excuse the failure to file a claim for compensation within six months after the injury must continue until the claim is actually filed with the Board. Petroleum Casualty Co. v. Dean, 132 Tex. 320, 122 S.W.2d 1053. It is also true that reasonable delays, both prior and subsequent to knowledge of the facts relative to the claim, are to be considered in determining good cause, and this includes a reasonable time for investigation, preparation, and the filing of the claim. Hawkins v. Safety Casualty Co., 146 Tex. 381, 207 S.W.2d 370.

■ The evidence does not suggest that appellee, at any time, failed to exercise diligence in asserting and claiming his right to receive compensation from appellant. After he filed notice of his injury, appellee received compensation payments regularly until the one time that the checks stopped coming. He then wrote the Board, the payments were resumed and continued until February 10, 1950. During this time and up until shortly before the claim was filed, negotiations were in progress with appellant to determine the extent of appellee's injury and to make a lump sum settlement with him. No contention is made that such negotiations were not in good faith on the part of either party. When appellee received notice, through his attorney, that further payments would not be made, the claim was promptly filed. We think the finding of the jury that good cause existed for not filing the claim within six months after the injury is well supported by the evidence. Fidelity & Casualty Co. of N. Y. v. Ener, Tex.Civ.App., 97 S.W.2d 267.

Our holding that the jury's answer to issue 14 is supported by the evidence, renders a discussion of issue 15 unnecessary.

■ Appellant complains of the action of the trial court in permitting appellee to testify as to his negotiations with agents and adjusters of appellant during the time compensation was being paid to him.

Some of this testimony was objected to while other similar testimony of appellee was admitted without objection. However, we do not think it is necessary to set out the testimony or here discuss the proof of agency, for the reason that the inquiry before the jury was: Did appellee exercise ordinary prudence in filing his claim for compensation? This inquiry involved what appellee did, and on what information (whether it was true or false) he acted. In McAfee v. Travis Gas Corporation, 137 Tex. 314, 153 S.W.2d 442, 448, the court quoted with approval the rule that: "Where the question is whether a party has acted prudently, wisely, or in good faith, the information on which he acted, whether true or false, is original and material evidence, and not hearsay."

Appellant is designated, in the pleadings, as a corporation. It could, therefore, conduct its business only by and through agents and representatives. At the time of the negotiations testified to by appellee, he had filed his notice of injury and had received payments of compensation from appellant. In the exercise of ordinary prudence, appellee would reasonably expect appellant to further negotiate with him by and through agents or adjusters, and since the rule as stated, supra, as to the existence, or nonexistence, of good cause required appellee to exercise ordinary prudence in filing his claim, we think evidence of what he did and the negotiations had were relevant and admissible on that issue.

■ While appellant did not offer any evidence to deny the existence of its relationship with the purported agents and adjusters, and its silence would add to the probative force of the circumstances tending to establish such relationship, Norris Bros. v. Mattinson, Tex.Civ.App., 145 S.W. 2d 204, yet we think the admissibility of the evidence is properly determined under the rule above stated.

Because it is our opinion that the points briefed by appellant do not present reversible error, they are overruled and the judgment of the trial court is affirmed.

Affirmed.