## CONSOLIDATED CASUALTY INSURANCE COMPANY V. REX PERKINS

No. A-4860. Decided May 4, 1955.
Rehearing overruled June 8, 1955.
(279 S.W. 2d Series 299)

*Baker, Botts, Andrews & Shepherd, Otto J. Weber, Jr.,* and *Frank G. Harmon,* all of Houston, for petitioner.

The Court of Civil Appeals erred in failing and refusing to hold that the trial court had erred in overruling defendant's motion for instructed verdict and refusing to enter judgment for the defendant insurance company, because plaintiff had not shown good cause for failing to file his claim within the stautory period of six months from the time of his alleged accident. Texas Emp. Ins. Ass'n. v. Portley, 153 Texas 62, 263 S.W. 2d 247; Texas Emp. Ins. Assn. v. Leake, 196 S.W. 2d 842; Cunningham v. Fidelity & Casualty Co. of N.Y., 102 S.W. 2d 1106.

*Gordon R. Welborn* and *Rex Houston,* both of Henderson, for respondent.

In reply to petitioners contentions cited Garitty v. Rainey, 112 Texas 369, 247 S.W. 825; Layton v. Hightower, 118 Texas

166, 12 S.W. 2d 110; Harris v. Willson, 122 Texas 323, 59 S.W. 2d 106.

MR. JUSTICE SMITH delivered the opinion of the Court.

This is a suit for compensation under the Workmen's Compensation Act of Texas. The judgment of the trial court, based upon jury findings in favor of respondent, has been affirmed by the Court of Civil Appeals. 269 S.W. 2d 683.

Petitioner presents eleven points of error. Eight of these points present the contention that, as a matter of law, the evidence failed to establish that "good cause" existed for the failure of respondent to file his claim for compensation within six months from the date of the alleged accident on April 30, 1950.

Article 8307, Sec. 4a, Workmen's Compensation Law, Vernon's Annotated Civil Statutes of Texas, provides that "* * * no proceeding for compensation for injury under this law shall be maintained unless a notice of the injury shall have been given * * * within thirty days after the happening thereof, and * * * claim for compensation with respect to such injury shall have been made within six months after the occurrence of same; * * *. For good cause the board may, in meritorious cases, waive the strict compliance with the foregoing limitations as to notice, and the filing the claim before the board."

■ Respondent alleged that he sustained an injury while in the course of his employment on May 5, 1950. The proof shows that the injury was sustained on April 30, 1950, and respondent filed his claim for compensation with the Industrial Accident Board on October 5, 1951 — 17 months and five days after the date of the accident.

Petitioner contends that the trial court erred in refusing to grant its motion for instructed verdict on the ground that the evidence fails, as a matter of law, to show that good cause existed for failure to file the claim prior to October 5, 1951. We agree with petitioner on that question, and, therefore, it becomes unnecessary to decide the other points of error.

Respondent-plaintiff alleged that while cranking an engine he sustained a serious injury, "causing a straining, pulling and tearing of the muscles of the heart, causing acute dilatation and palpitation, and resulting in a coronary occlusion with myocardial infraction." In addition to the specific injury, plaintiff

alleged that the muscles of the heart region were pulled and strained, causing a general weakening and sickness of the heart commonly referred to as heart trouble or weak heart; that as a natural result, respondent sustained an injury which has permanently and totally incapacitated the respondent-plaintiff from performing physical labor, and that such disability has existed since the date of the accident. Respondent-plaintiff alleged further that some eight days after sustaining such injury his physician ordered him not to further engage in any type of work requiring any strain or stress upon him.

Respondent does not claim that he did not know of the serious nature of his injury and for that reason failed to file his claim. The evidence is clear that at all times, after receiving the opinion of his physician, respondent refrained from work because he knew and fully appreciated the seriousness of his injury. Based upon the pleadings and evidence, the respondent obtained jury findings to the effect that the alleged injury was sustained on or about the 30th day of April, 1950, and that total and permanent incapacity was the result of such accidental injury.

Respondent's witness, Dr. G. H. Stripling, testified: "I don't think any man with a coronary occlusion should try to do work requiring strenuous physical exertion." The doctor examined Mr. Perkins on May 5, 1950 and on May 19, 1950, and testified that he took two electrocardiograms which showed that he was suffering from a recent coronary occlusion, and it was the opinion of the doctor that "this strain which he threw on his body" a few days prior to May 5, 1950, precipitated or could have precipitated this coronary occlusion. It will be noted that the jury failed to find that Mr. Buser advised respondent that he could not file a claim for compensation as long as he remained on the Company payroll.

Respondent alleged that "good cause" existed continuously from April 30, 1950, the date of the injury, until October 5, 1951, the date of filing his claim, for failure to file such claim with the Industrial Accident Board as required by Article 8307, Sec. 4a, supra. Jury findings on the issues of "good cause" were, in substance, as follows:

(1) That plaintiff's immediate superior, Earl Slayton, advised him that he would be continued on the payroll of the Company until he could return to work; that plaintiff believed such statement to be true, and that he relied upon the statement;

(2) That Earl Slayton advised plaintiff shortly after April 30, 1950, that he would be returned to "active duty in a light duty capacity," and that plaintiff believed and relied on such promise;

(3) That Clem Buser of Sinclair Oil & Gas Company *did not* advise plaintiff approximately four months after April 30, 1950, that he could not make a claim for compensation as long as he remained on the Company payroll;

(4) That the affirmative findings set out above constituted good cause for Rex R. Perkins not filing his claim for compensation sooner than said claim was filed:

(5) That plaintiff believed until the time he employed his attorneys that he could not make a claim for compensation as long as he was on the Company payroll; and that such belief caused him not to file his claim until the time it was actually filed;

(6) That Clem Buser of Sinclair Oil & Gas Company told plaintiff about four months after April 30, 1950 that he, Clem Buser, would advise plaintiff when to make his claim for compensation if it became necessary for him to file a claim; and that plaintiff believed such statement to be true and that such belief caused him not to file his claim until the time it was actually filed;

(7) That plaintiff received checks from his employer until a short time prior to August 16, 1951, and that the receiving of said checks caused plaintiff to believe that he was still on the Company payroll and was not to make a claim for compensation, and that such belief caused him not to file his claim until the time it was actually filed;

(8) That the affirmative findings (5), (6) and (7) above constituted good cause for not filing the claim until October 5, 1951;

(9) That all the affirmative findings taken together constituted good cause.

The fact that petitioner promised respondent that he would be continued on the payroll and that he would later be returned to "active duty in a light duty capacity" does not constitute "good cause" for the late filing of the claim in this case. See

Young v. Safety Casualty Co., Texas Civ. App., 168 S.W. 2d 884, writ refused; Indemnity Ins. Co. of North America v. Williams, 129 Texas 51, 99 S.W. 2d 905, 906; Texas Fire & Casualty Underwriters v. Searl, Texas Civ. App., 158 S.W. 2d 865, writ refused. The respondent testified that he knew he had sustained a serious injury on April 30, 1950, but that he believed and relied upon the representations made by Mr. Slayton and for that reason he has shown good cause for the late filing of his claim. The record shows that on March 10, 1951, a letter was written to respondent by his employer advising him that the sickness-disability benefits to which he was entitled under what was termed a "working agreement" with the Metropolitan Life Insurance Company would be exhausted in July, 1951.

■ Respondent testified that he knew upon receipt of this letter in March, 1951, that he would receive the last payment in July, 1951. He further testified that he had worked for Sinclair Oil & Gas Company for many years and that he knew that the Company had a rule that before an injured employee could return to work he must first obtain a release from a doctor. Assuming that respondent believed and relied upon the statements made by Mr. Slayton and that such statements constituted good cause for his failure to file his claim within the first six months after the date of the injury, we hold that respondent did not act as a reasonably prudent person should have acted. In view of the knowledge obtained in March, 1951, that he would not receive any further benefits from his employer after July, 1951, and taking into consideration the serious nature of his injury, and the further fact that he would not be able to return to work without a doctor's release, the respondent could not continue to rely upon such representations. There is no evidence showing good cause for waiting from March 1951 until October 5, 1951 to file the claim. When a claim is not filed within the statutory period of six months the good cause must continue to the date when same is actually filed. Petroleum Casualty Co. v. Dean, 132 Texas 320, 122 S.W. 2d 1053; Williamson v. Texas Ind. Ins. Co., 127 Texas 71, 90 S.W. 2d 1088.

Respondent contends that the representation made by Mr. Buser that he, Buser, would advise him when to file his claim, and the further fact that having received checks from the employer through July, 1951, all of which caused him not to file his claim until October 5, 1951, was sufficient to establish the issue of "good cause." The statement attributed to Mr. Buser was made, as found by the jury, about four months after the date of the accident. The respondent did not at any time make

further inquiry of Mr. Buser about filing his claim. Although he received the letter of March, 1951, respondent still made no effort to file his claim and did not contact Mr. Buser with regard to the promise that had been made that he, Mr. Buser, would tell him when to file his claim. The respondent is presumed to have known the law. The test of good cause for delay is that of ordinary prudence. The mere promise that Mr. Buser would tell respondent when to file his claim does not meet this test. Respondent stresses the fact that a close friendship existed at all times between Mr. Slayton, Mr. Buser and himself and that on each occasion when the two would visit respondent they would tell him that they believed that he would return to work; that in August, 1951, the date of the delivery of the last sickness-benefit check, Mr. Buser considered that respondent would be able to return to work. Respondent advances the contention that the statement made by Mr. Buser that he would tell him when to file his claim, coupled with the assurances that he would be returned to work, excused him from filing his claim until October 5, 1951. In view of the record in the case, we hold, as a matter of law, that a mere promise by the employee's superior that at some time in the future he would be told when to file his claim does not constitute good cause for the failure to file the claim until October 5, 1951. See Texas Indemnity Ins. Co. v. Cook, Texas Civ. App., 87 S.W. 2d 830, writ refused.

The judgments of the trial court and the Court of Civil Appeals are reversed and judgment here rendered that respondent take nothing.

Opinion delivered May 4, 1955.

Rehearing overruled June 8, 1955.