**TEXAS CASUALTY INSURANCE COMPANY, Petitioner,**

v.

**Miles Clifford BEASLEY, Respondent.**

No. A–10376.

Supreme Court of Texas.

March 17, 1965.

Rehearing Denied June 2, 1965.

Coleman Gay, Austin, for petitioner.

Thomas C. Ferguson, Johnson City, for respondent.

CALVERT, Chief Justice.

This is a workmen's compensation case. In response to special issues the jury found that Miles Clifford Beasley, the claimant, sustained an accidental injury in the course of his employment which produced permanent, total incapacity. The trial court rendered judgment on the verdict for Beasley for 401 weeks of compensation at $35.00 per week, less benefits previously paid. The Court of Civil Appeals affirmed. 381 S.W. 2d 236. We reverse the judgments of the trial court and the Court of Civil Appeals and render judgment that the claimant take nothing.

Beasley sustained a back injury on April 11, 1961, while in the course of his employment for Premier Granite Quarries, Texas Casualty's assured. He filed his claim for compensation benefits with the Industrial Accident Board on November 13, 1962, nineteen months after the date of his injury. Under the provisions of Sec. 4a of Art. 8307, Vernon's Texas Civil Statutes, his right to compensation benefits is barred because of his failure to file his claim within six months from the day of his injury, unless he had good cause for his delay. The only question

to be decided here is whether the evidence adduced at the trial fails as a matter of law to show good cause.

■ It is not enough to satisfy the statutory requirement to prove that good cause for failure to file existed during the six-month period; an injured workman owes a duty of continuing diligence in the prosecution of his claim, and must prove that good cause for failure to file continued up to the date of filing. Texas Employers Insurance Ass'n v. Hancox, 162 Tex. 565, 349 S.W.2d 102; Consolidated Casualty Insurance Co. v. Perkins, 154 Tex. 424, 279 S.W.2d 299; Petroleum Casualty Co. v. Dean, 132 Tex. 320, 122 S.W.2d 1053; Williamson v. Texas Indemnity Ins. Co., 127 Tex. 71, 90 S.W.2d 1088. Beasley's proof on the issue must be tested by that rule.

Beasley consulted and was examined by three different doctors within a brief period of time following his injury. Acting upon their advice, he submitted to surgery on May 8, 1961, for the removal of a herniated disc. He returned to his work for Premier some eight weeks later and, in spite of almost constant pain in the area of the operation, continued in that employment until February 10, 1962. He quit his job with Premier on advice of his doctor and obtained employment on a ranch on February 15, 1962, where he was still working at the time of trial. He strained or wrenched his back in July, 1962, and was hospitalized in traction for five days. He was released from the hospital on July 23, 1962.

On June 20, 1962, the owner of the ranch, who was also an attorney, wrote a letter to Premier Granite Quarries about a possible compensation claim for Beasley. Premier referred the letter to the claims manager of Texas Casualty Company. The claims manager replied to the letter on July 8, 1962, and suggested that he would be pleased to receive any kind of compromise offer with regard to Beasley's claim. Between July 8, 1962, and the middle of August of that year, Beasley's employer made one or two telephone calls

to the claims manager of Texas Casualty, probably one before and one after his hospitalization. Near the middle of August, a conflict of interest arose between Texas Casualty and the compensation carrier of Beasley's employer. In the latter part of August, Beasley's employer notified Beasley of the conflict, advised him that he could no longer continue negotiations with Texas Casualty, and referred him to another attorney. Around October 1, 1962, Beasley consulted the attorney to whom he had been referred and who thereafter filed the claim.

The claimant's reason for delaying the filing of his claim is to be found principally in his own testimony. He testified that he was assured by the doctors before his operation on May 11, 1961, that the surgery would make him "as good as new"; and in spite of the fact that he continued to have pain in his back and leg, he continued to believe that he would get well up to the time that he had to go back to the hospital in July, 1962, at which time he realized that he was not going to get well and would have to file a claim. He testified further that he did not want to assert a claim if he was going "to be all right."

 For the purpose of deciding the question before us, we will assume, without deciding, that good cause for failure to file a claim existed until Beasley was hospitalized in July, 1962. See Hawkins v. Safety Casualty Co., 146 Tex. 381, 207 S.W.2d 370. The question then narrows to this: Did good cause for failure to file the claim continue to exist from the middle of July, 1962, until the claim was filed on November 13, 1962? The answer to the question turns on the degree of diligence used to get the claim filed. Beasley was charged with the duty of prosecuting his claim with that degree of diligence which a reasonably prudent person would have exercised under the same or similar circumstances. Watson v. Texas Indemnity Ins. Co., 147 Tex. 40, 210 S.W.2d 989; Hawkins v. Safety Casualty Co., 146 Tex. 381, 207 S.W.2d 370; Hartford Accident & Indemnity Co. v. Hardin, Tex.Civ.

App., 252 S.W.2d 752, writ refused. Ordinarily, whether a claimant has used that degree of diligence is a question of fact to be determined by a jury or trial judge. Texas Employers' Ins. Ass'n v. McDonald, Tex. Civ.App., 238 S.W.2d 817, writ refused. However, the evidence in a particular case may lead to lack of diligence as the only reasonable conclusion, in which event the question is to be decided as a matter of law. Hawkins v. Safety Casualty Co., 146 Tex. 381, 207 S.W.2d 370, 372. We hold that the evidence in this case requires a conclusion, as a matter of law, that the claimant did not exercise the degree of diligence in the filing of his claim which a reasonably prudent person would have exercised under the same or similar circumstances.

The evidence reflects that Beasley knew he should file a claim. Texas Casualty paid him weekly compensation benefits for eleven or twelve weeks following his injury. During this period Beasley went to see a lawyer with reference to the filing of a claim, and was advised that he did not need to file one *as long as he was drawing compensation.* However erroneous the advice may otherwise have been, it certainly confirmed the necessity for filing a claim when compensation payments ceased, if he should be disabled. In spite of his knowledge, there is in the record no evidence that he or his employer-attorney took any steps to get a claim filed from the middle of July, 1962, at which time he concluded he was not going to get well, to the latter part of August, and no evidence that he did anything toward filing one during the month of September. There is no evidence that Beasley advised his employer-attorney that a claim had not been filed, or discussed with him the necessity or advisability of filing a claim. The evidence is conflicting as to whether in dealing with Texas Casualty's claim agent the employer was acting as a friend or as Beasley's attorney. The relationship is immaterial; he was Beasley's agent. There is no evidence that Beasley was prevented by his physical condition or by the duties of his employment from filing his claim during the month of

September. The controlling fact is that no steps were taken to get a claim filed for two and a half months. That is too long for a reasonably prudent person to do nothing. See Jones v. Texas Employers Ins. Ass'n, 128 Tex. 437, 99 S.W.2d 903. It becomes unnecessary to decide whether under the circumstances five to six weeks was an unreasonable period of time for investigation and filing of the claim by the attorney who filed it.

The Court of Civil Appeals held that the evidence presented a fact issue on the issue of diligence. In making the holding, that court relied primarily on Texas Employers' Ins. Ass'n v. McDonald, Tex.Civ.App., 238 S.W.2d 817, writ refused. While the evidence of good cause in that case is in some respects similar to the evidence in this case, it is in other respects distinctly dissimilar. In that case the claimant thought papers he had filed with the Industrial Accident Board within thirty days of his injury was a claim for compensation; here, the claimant knew he had not filed a claim. In that case a claim for compensation was filed promptly upon the termination of settlement negotiations; here, the claimant took no steps whatever to prosecute his claim until some thirty days after termination of settlement negotiations, and offered no evidence to excuse his failure to do so. We conclude that this case is not ruled by McDonald.

Texas Casualty's motion for an instructed verdict and its subsequent motion for judgment notwithstanding the verdict should have been granted. The judgments of the Court of Civil Appeals and trial court are reversed, and judgment is here rendered that the plaintiff take nothing.

SMITH, Justice (dissenting).

I respectfully dissent. The Court propounds the question: "Did good cause for failure to file the claim continue to exist from the middle of July, 1962, until the claim was filed on November 13, 1962?" Then the Court concludes that the answer to the question turns on the degree of diligence used to get the claim filed.

The question and the rule announced as being controlling has placed Beasley's case in an entirely different light than the record reflects. The Court has failed to consider the evidence most favorable to the finding of the jury on the issue of good cause. The trial court heard the evidence on the issue of good cause. The evidence which will be discussed later afforded the basis for the submission of Special Issues number 17 and 18.[1] These issues were answered in the affirmative. The jury found that Beasley *believed* up until November 13, 1962, the date the claim was filed, that the operation in May, 1961, "would so repair the personal injuries sustained by him, if any, on April 11, 1961, that he would not sustain any serious disability after he recovered from the operation." The jury found that such belief constituted good cause.

The statute does not define "good cause." The trial court defined "good cause" as meaning "whether or not the cross-plaintiff, Miles Clifford Beasley, in the prosecution of his claim for compensation, used that degree of diligence which a man of ordinary and reasonable prudence, situated as was the cross-plaintiff, would have used under the same or similar circumstances." This definition meets the test announced by the

1. "SPECIAL ISSUE NO. 17: Do you find from a preponderance of the evidence that the Cross-Plaintiff Miles Clifford Beasley believed that the operation performed upon him in May, 1961, would so repair the personal injuries sustained by him, if any, on April 11, 1961, that he would not sustain any serious disability after he recovered from the operation?
 "Answer, 'Yes' or 'No'
 "We, the Jury, answer: Yes

"SPECIAL ISSUE NO. 18: * * * Do you find from a preponderance of the evidence that such belief, if any, constituted good cause as that term is defined herein for the Cross-Plaintiff's failure to file his claim with the Industrial Accident Board up until the time the same was filed?
 "Answer 'Yes' or 'No'
 "We, the Jury, answer: Yes"

courts in such cases as Hawkins v. Safety Casualty Co., 146 Tex. 381, 207 S.W.2d 370 (1948); Consolidated Casualty Insurance Co. v. Perkins, 154 Tex. 424, 279 S.W.2d 299 (1955); and Hartford Accident & Indemnity Co. v. Hardin, Tex.Civ.App. (1952), 252 S.W.2d 752, writ refused. The Hawkins and Hardin cases also hold that ordinarily whether the claimant has used the degree of diligence required is a fact issue, and that the question "may be determined against the claimant as a matter of law only when the evidence, construed most favorably for the claimant, admits no other conclusion." It has been well recognized at least since the case of Texas Employers Ins. Ass'n v. Guidry, 128 Tex. 433, 99 S.W.2d 900 (1937), that the period of six months provided in the statute for the filing of a claim with the Industrial Accident Board begins to run on the date of the injury.

The strict provisions of Article 8307, § 4a,[2] that notice of injury must be given within 30 days, and claim for compensation for injuries shall be made within 6 months were not invoked before the Industrial Accident Board. The Board entered its award in favor of the claimant, and Texas Casualty appealed from the adverse order of the Board to the District Court. In the District Court, Beasley, as cross-plaintiff, pleaded that "good cause" existed for his failure to file his claim prior to November 7, 1962, the date formal claim was filed. Beasley has discharged his burden if the Court will follow the rule that only the evidence most favorable to Beasley is to be considered. If there is some evidence that the claimant exercised some care and prudence, then the verdict of the jury on the issue of good cause

and the judgment of the trial court should be upheld. This court has no power to substitute its judgment for that of the trier of the facts.

The Court assumes, without deciding, that "good cause" existed from April 11, 1961, to July, 1962. I take the position that good cause existed continuously until he filed his claim. Prior to the operation, Beasley went to Dr. Dansby, who first saw him on April 21, 1961. Beasley first saw Dr. Hoerster within a day or two after the accident. Dr. Dansby said that an X-Ray diagnosis enabled him to determine that Beasley was suffering from a herniated disc between the 4th and 5th lumbar vertebrae, and referred Beasley to Drs. Hinchey and Day at San Antonio, who found that the spinal cord was involved and referred Beasley to Dr. Ralph Munslow, a neurosurgeon. Dr. Munslow advised Beasley to return to Llano and enter the hospital and be "treated with traction to see if he could get relief in that manner." Beasley returned to Dr. Dansby who hospitalized him and applied traction. This treatment afforded no relief, and the operation followed. Beasley was told before the operation that he would be "good as new" and that he believed the doctors. Dr. Dansby testified that Dr. Munslow was "highly optimistic" about Beasley's recovery. There is no evidence that Dr. Munslow ever at any time changed his opinion, or that Dr. Dansby changed his opinion within the time he was "seeing" Beasley. Beasley testified that he did not want to file a claim if he was going to "get all right," and that in July, 1962, he had some *misgivings* about whether he was going to get well or not. He testified that when he returned to the hospital in July,

---

**2.** "Unless the Association or subscriber have notice of the injury, no proceeding for compensation for injury under this law shall be maintained unless a notice of the injury shall have been given to the Association or subscriber within thirty (30) days after the happening of an injury or the first distinct manifestation of an occupational disease, and unless a claim for compensation with respect to such injury shall have been made within six (6) months after the occurrence of the

injury or of the first distinct manifestation of an occupational disease; or, in case of death of the employee or in the event of his physical or mental incapacity, within six (6) months after death or the removal of such physical or mental incapacity. For good cause the Board may, in meritorious cases, waive the strict compliance with the foregoing limitations as to notice, and the filing of the claim before the Board."

1962, he was put in traction; that he did not know whether the "traction" gave him relief or "just lying there." He said he did get some relief. It should be noted that there is no testimony that the doctor or anyone at the hospital or any place told him that he would not get well. The jury could have concluded from the fact that the doctor put Beasley in traction in July, 1962, that he, the doctor, still believed Beasley could recover. The doctors gave no indication that Beasley would not recover until December, 1962. These facts are sufficient to support the finding that "good cause" was shown up to November 7, 1962. There is no evidence that any of the doctors ever told Beasley at any time prior to November 7, 1962, that he would not get well. The claim was filed on this latter date, and it was not until December, 1962, that Dr. Henry Hoerster said he thought Beasley had some disability. The fact that Beasley, in July, 1962, had some "misgivings" about recovering is not conclusive that he was not still relying upon his doctors' statements that he would in time be as good as new. Beasley was not a malingerer but to the contrary his every act was calculated to save money for the insurer. The cost of an operation and the expenses incident thereto were far less than the award for total and permanent disability in this case.

The facts in this case are much stronger in support of continuous good cause than the facts relied upon in any of the good cause cases referred to herein. It is true that Beasley knew he should file a claim, but he also knew that he had been told by the doctors who operated that he would be as good as new after the operation. Beasley knew from the beginning that his injuries were serious, but he had been told he would be a new man after the operation. My position is that Beasley acted as a reasonably prudent person in submitting to the operation after being told by the doctors that he would be a "new man" after the operation and that he had the right to rely upon such representation until he filed his claim on November 7, 1962, even though he had some "misgivings" about getting well.

In the Hardin case, supra, the claimant believed that her injuries were trivial. The Court, in effect, held that the claimant did not have a bona fide belief which would lead an ordinarily prudent person to believe that his injuries were trivial and temporary. No doctor told the claimant, Mrs. Hardin, that she would be well. To the contrary, a doctor executed a certificate in which he stated "the patient had been continuously disabled, and 'according to history discontinued work January 19, 1951.' " In the Perkins case, supra, this Court held that "good cause" had not been shown. The facts reflect why we so held. We held that Perkins knew the law and could not rely upon a promise made some four months after the accident. The facts there are in no wise comparable to the facts presented here which show complete reliance of a patient upon his doctor. He submitted to the operation, confidently believing that he would regain his strength and thereafter continue gainful employment for which he was qualified prior to his injuries. All of the facts were related to the jury, including Beasley's anxiety and frustration in regard to the filing of his claim.

Texas Casualty desired to minimize the claim by paying for an operation, the cost of which would be much less than the amount of recovery by the claimant based upon a finding of total and permanent disability. On the other hand, Beasley agreed to the operation because he relied upon the representations of the doctor. Since the doctors at no time prior to November 7, 1962, indicated that they had changed their opinion, the jury had ample reason to conclude that Beasley continued to rely upon the doctors until November 7, 1962. It is our duty to construe the evidence most favorably for the claimant and uphold the jury verdict. It was never the intention of the Legislature that the provisions of Article 8307, § 4a be applicable in a situation where the insured has recognized li-

ability to the extent of paying weekly compensation and inducing the injured party to submit to an operation.

The action of the attorneys employed after July, 1962, is in keeping with the history of the relationship between the insured and the insurer. The attorneys were not negligent, but acted as reasonable men would under all the circumstances. Therefore, the rule that the insured is charged with the negligence of his attorney or attorneys cannot be invoked.

The judgment of the trial court and the Court of Civil Appeals should be affirmed.

## ON MOTION FOR REHEARING

CALVERT, Justice.

In his motion for rehearing Beasley calls our attention to the fact that in addition to awarding him a recovery of benefits for permanent, total incapacity, the trial court's judgment, affirmed by the Court of Civil Appeals, awarded a recovery of medical and hospital expenses incurred by him in 1962, and suggests that the judgment should have been affirmed to this extent.

Beasley bases his right to recover medical and hospital expenses on one sentence in section 7 of Art. 8306,[1] as amended by Acts 1957, Reg. Ses., 55th Leg., ch. 397, p. 1186, as follows:

"The association shall furnish such medical aid, hospital services, nursing, chiropractic services, and medicines as may reasonably be required at the time of the injury and at any time thereafter to cure and relieve from the effects naturally resulting from the injury."

The quoted sentence is but the first of several in sec. 7 in a quite lengthy act amending several sections of Arts. 8306, 8307 and 8309.

Before the 1957 amendment, sec. 7 of Art. 8306 provided, generally, that the insurer should furnish reasonable medical and hospital services for an injured workman during the first four weeks following injury, and, upon proper weekly certificates, should furnish additional medical services for a total period of not exceeding ninety-one days and additional hospital services for a total period of not exceeding one hundred and eighty days. The amendment of 1957 removed the time limitation on the insurer's liability for medical and hospital services and abrogated the requirement for weekly certificates showing the necessity therefor. The Act of 1957 also added a new paragraph to section 5 of Art. 8307. As pertinent here, the new paragraph provides that an award of the Industrial Accident Board or a judgment of a court shall not include any cost or expense of medical or hospital services not actually furnished to an injured employee prior to the date of the award or judgment, and makes the first final award or judgment res judicata of the insurer's liability for all such expense which could have been claimed up to the date of the award or judgment and of the issue that the injury of the employee is subject to the provisions of the compensation law with respect to such items. The paragraph further provides that the Board shall have continuing jurisdiction to make successive awards for the cost of medical and hospital services incurred after the first final award or judgment and during a six-month period immediately preceding each such award.

■ Beasley assumes that his claim for medical and hospital expenses is governed by the provision which authorizes the Board to make successive awards, and argues that inasmuch as such expenses were incurred within six months of the date on which *his claim was filed*, the award and judgment therefor should be upheld. Aside from the fact that this Court does not have constitutional power to change

---

1. All Article references are to Vernon's Texas Civil Statutes.

the plain wording of the statute, it is obvious that the claim is not governed by the provision authorizing successive awards. The award is not a successive award; it is the first award made by the Board with respect to Beasley's claim for compensation, and the law governing the making of first awards controls.

■ ■ A part of the law governing the making of first awards is the requirement in sec. 4a of Art. 8307 that claims for compensation be filed within six months of the day of injury unless good cause for late filing be shown. Claims for expenses incurred for medical and hospital services may be prosecuted by the injured workman or by owners of the claims, and right of recovery may be adjudicated by the Board and by the courts in the same or in entirely separate proceedings and suits. Maryland Casualty Co. v. Hendrick Memorial Hospital, 141 Tex. 23, 169 S.W.2d 969 (1943). In this case the Board made only one award. It directed Texas Casualty to make payment to the owners of the claims for medical and hospital services and to pay certain compensation benefits to Beasley. The Board's award was vacated when Texas Casualty filed its suit to set the award aside, and it liability for payment of the medical and hospital expenses could only be established by cross-action. The owners of the claims did not file a cross-action. Beasley did. In his cross-action Beasley alleged that he was obligated to pay the expenses and he sought recovery of the amount thereof. We need not decide whether a lack of diligence by Beasley in filing his claim for compensation would have defeated a suit by the owners had they sought recovery on their claims for medical and hospital services.

That is not the case before us. We are well convinced, however, that if an injured employee pays such expenses, or recognizes his obligation therefor and sues for them and the owners are content to look alone to him for payment, such expenses become a part of his claim for compensation within the meaning of sec. 4a, Art. 8307 and are barred when his claim for weekly compensation benefits is barred.

We have found no Texas case dealing with this question, but to hold otherwise would be contrary to the spirit of the limiting statute. Payments made or obligations incurred by an employee for medical or hospital services are incidental to his claim for statutory benefits for incapacity and are usually much less. The Legislature can hardly have intended that while an employee's claim for weekly benefits should be barred by his negligence in filing claim therefor, he should nevertheless be entitled to recover his medical and hospital expenses. Analagous and in accord with our holding are Dornbos v. Bloch and Guggenheimer, 326 Mich. 626, 40 N.W.2d 749 (1950); Coombs v. Nash Refrigeration Co., 18 N.J.Misc. 421, 14 A.2d 44 (1940); Trehern v. Grafe Auto Company, 232 Miss. 854, 100 So.2d 786 (1958); Canada Dry Bottling Co. of Florida v. White, 153 Fla. 70, 13 So.2d 595, 596; and Cook v. International Paper Co., La.App., 42 So.2d 558, 560, in which it is held that statutory periods of limitation barring a workman's right to compensation benefits also bar his right to recover medical and hospital expenses.

The motion for rehearing presents no new matter other than that discussed. The motion for rehearing is overruled.