**ALLSTATE INSURANCE COMPANY,**
Petitioner,

v.

**Ulios Ray KING, Respondent.**

No. B–1303.

Supreme Court of Texas.

July 16, 1969.

Rehearing Denied Oct. 1, 1969.

Sheehy, Jones, Cureton, Westbrook & Lovelace, L. Wayne Scott, Waco, for petitioner.

Naman, Howell, Smith & Chase, Louis Muldrow and Albert Witcher, Waco, for respondent.

WALKER, Justice.

This is a compensation case. Sears, Roebuck & Company was the employer, Ulios Ray King the employee, and Allstate Insurance Company the insurer. The trial court rendered judgment on the verdict for total and permanent incapacity, and the Court of Civil Appeals affirmed. 434 S. W.2d 162. In our opinion there is no evidence to support the jury's findings that plaintiff had good cause for failing to file his claim until some sixteen months after he was injured.

Plaintiff was employed by Sears as a truck driver for a period of about ten years beginning in 1955. In the performance of his duties he loaded and unloaded heavy items of merchandise and suffered numerous injuries. His employment was terminated on April 13, 1965, after Sears was advised by a doctor that plaintiff was physically unable to do his regular work. The following year plaintiff filed two claims for compensation. One is based on an injury sustained April 10, 1964, when plaintiff was unloading a large root beer or hot dog stand. This claim was filed April 14, 1966. The other injury occurred on February 23, 1965, when plaintiff was lifting a dresser. The claim based on this injury was filed June 9, 1966. Both claims having been dismissed by the Industrial Accident Board, plaintiff perfected his appeals to the district court where the two cases were consolidated.

The jury refused to find that the 1964 injury caused any incapacity but did find that plaintiff suffered total and permanent incapacity as a result of the 1965 injury. These findings have not been attacked. The jury also found that Sears failed to report the injuries to the Industrial Accident Board, but refused to find that Sears intended thereby to prevent plaintiff's learning that his claims had not been filed. The good cause findings with respect to the 1965 injury are: (33) that plaintiff reasonably believed Sears would process and take care of the handling of all his insurance claims for injuries; (34) that Sears' local manager, Neil Gately, represented to plaintiff that the insurance benefits to which he was entitled for injuries received on the job were the insurance benefits provided for retiring employees; (35) that plaintiff reasonably believed the insurance policy he received at the time of his retirement constituted the insurance benefits to which he was entitled for injuries received in the course of his employment; (39) that the beliefs inquired about in Issues 33 and 35 constitute good cause for plaintiff's failure to file his claim sooner than it was filed; (39A) that plaintiff and his attorney exercised reasonable diligence in investigating, preparing and filing the claim after discovering or realizing the necessity therefor; (44) that Sears' failure to report the injury caused plaintiff not to file his claim; and (45) that Sears' failure to report the injury constitutes good cause for plaintiff's failure to file his claim before he did.

Plaintiff was 58 years old at the time of trial. He had completed the seventh grade in a country school. In 1959 he injured his back while lifting an ice box in the course of his employment. He lost six or eight weeks of work at the time, and his back was so weakened that he wore a brace most of the time thereafter. His regular wages were paid by Sears during this period of disability. During another period of disability in 1962 he received payments from Sears that were characterized as a "gratuity" or an "allowance" and also received at least one $35.00 payment from Allstate.

After the 1964 injury, he filed a written report with Sears stating that the strain had produced hemorrhoids. He was treated

for this condition by a physician. According to plaintiff's testimony at the trial, he also sustained an injury to his back which was orally reported to Sears. This incident occurred just before his regular vacation. At the end of the vacation, he returned to work and was able to perform his regular duties although he suffered some pain from his back.

The injury that is the basis of the trial court's judgment occurred February 23 1965. Plaintiff's written report filed with Sears two days later states that he injured the lower part of his back while attempting to carry a dresser. He was treated by a doctor but did not lose any time from his work. Beginning at that time, however, he had "quite a bit of pain" in his back and was unable to lift heavy objects as he had in the past. Sears promptly put another man with him to do the lifting, and thereafter plaintiff simply drove the truck.

Although the record is not entirely clear, Sears apparently sent plaintiff to a doctor for an evaluation of his condition. The doctor reported on March 16, 1965, that plaintiff's "back trouble and arthritis have progressed to the point that he is being unable to perform his regular job, and it is my opinion that he will be unable to function in this capacity any longer." About three weeks later Sears' local manager, Gately, told plaintiff his employment would be terminated on April 13. In this conversation plaintiff mentioned several times that he had been hurt on the job. Gately told plaintiff that Allstate had a "retiree insurance" to which plaintiff was entitled. According to plaintiff's testimony, "Gately said, 'you being hurt on the job, well, you have got to have an insurance' and, I just assumed everything was part of the insurance that was covering me before." Gately urged him to take an insurance policy, which he agreed to do. Eventually plaintiff received a certificate dated May 5, 1965, entitling him to the benefits accorded retired employees of Sears under a group hospitalization and medical expense policy issued by Allstate.

Plaintiff paid the insurance premiums but did not read the certificate until April, 1966, when he thought it might be necessary to have an operation on his back. Upon reading the certificate, he discovered Exclusion 1, which provides that no payment will be made for expenses incurred on account of injuries received in the course of employment. At about the same time, a friend told him about workmen's compensation benefits. A day or so later, plaintiff went to see Gately and telephoned a lawyer immediately after talking with Gately. The following day plaintiff received a letter from Gately advising that Exclusion 1 would not affect his coverage if he decided to have an operation. Plaintiff consulted a lawyer on April 9, and a formal contract of employment was signed on April 13.

Plaintiff told his lawyer about the 1964 injury, and a claim based upon that injury was filed April 14. The 1965 injury was not mentioned, however, and plaintiff did not even recall it until several weeks later when he found some papers while going through the glove compartment of his automobile. He then told his lawyer about the 1965 injury, and the second claim was filed on June 9.

We have not attempted to recite testimony bearing on the issue, but there is evidence to support the jury's finding that plaintiff reasonably believed his employer would process and handle his insurance claims for injuries. Under the facts of the present case, however, this belief could not constitute good cause for the delay of almost sixteen months in filing his claim. Although plaintiff was fully aware of his injuries and incapacity, he received no payments or benefits of any kind from either Sears or Allstate after he stopped working. The only communications he received were the insurance certificate and the letter advising that Exclusion 1 would not apply in his case. A person of ordinary prudence would not remain totally inactive and unconcerned about his rights as long as plaintiff did in sole reliance upon the

employer's promise to file a claim. See Consolidated Casualty Ins. Co. v. Perkins, 154 Tex. 424, 279 S.W.2d 299; Phariss v. Texas Employers Ins. Ass'n, Tex.Civ.App., 290 S.W.2d 289 (no writ); New Amsterdam Casualty Co. v. Keller, Tex.Civ.App., 62 S.W.2d 637 (wr. dis.). Cf. Moronko v. Consolidated Mutual Ins. Co., Tex.Sup., 435 S.W.2d 846.

Plaintiff does not contend that his continuing inaction can reasonably be explained by the belief that Sears would file his insurance claims. He says, and correctly so, that this belief accounts for his initial failure to file. According to his brief, "the subsequent and extended inaction on his part" was due to the belief that the hospitalization insurance certificate constituted the insurance benefits to which he was entitled for injuries received in the course of employment.

Plaintiff did believe that the policy constituted all the benefits to which he was entitled for injuries received while working for Sears. His belief in that respect is due, however, to ignorance of his rights rather than to any misrepresentation made by either his employer or the latter's insurance carrier. There is no evidence that Gately made an affirmative misrepresentation of any kind. Nothing he said or did can fairly be construed to mean that the insurance policy constituted all the benefits to which plaintiff was entitled for injuries received in the course of his employment. He did not promise plaintiff any payments other than medical, and plaintiff admitted that upon leaving Sears he did not expect a weekly compensation check or lump sum settlement. He also admitted that Gately referred to the policy as "hospital insurance," that Gately explained to him that the coverage was different from that he had while working for Sears, and that Gately told him he would have to pay premiums. Plaintiff points out that he had confidence in Sears and in Gately, and that his salary and medical expenses had always been paid when he was injured on the job. This is true, but nothing that transpired would have led a person of ordinary prudence, with knowledge of the benefits provided by the compensation law, to believe that plaintiff was entitled only to a hospitalization policy.

Sears had notified the Industrial Accident Board that it was a subscriber, and plaintiff is charged with knowledge that his employer had provided for the payment of compensation under the Act. Article 8306, Section 3c. He is also presumed to know the law. Consolidated Casualty Ins. Co. v. Perkins, 154 Tex. 424, 279 S.W.2d 299; Petroleum Casualty Co. v. Dean, 132 Tex. 320, 122 S.W.2d 1053. Ignorance of the six-months filing requirement will not excuse a failure to comply therewith. U. S. Fidelity & Guaranty Co. v. Herzik, Tex.Civ.App., 359 S.W.2d 914 (wr. ref. n. r. e.); Texas Employers Ins. Ass'n v. Doss, Tex.Civ.App., 301 S.W.2d 473 (wr. ref. n. r. e.); Driver v. Texas Employers' Ins. Ass'n, Tex.Civ.App., 266 S.W.2d 401 (wr. ref. n. r. e.). A belief that compensation is not payable for the particular injury, or while the claimant is continuing to work, does not constitute good cause for delay in filing. Sandage v. Traders & General Ins. Co., Tex.Civ.App., 140 S.W.2d 871 (wr. ref.); Zurich General Acc. & Fidelity Ins. Co. v. Walker, Com. App., 35 S.W.2d 115.

Plaintiff's assumption that the insurance policy constituted all the benefits to which he was entitled is due entirely to ignorance of the law and may not be urged as good cause for the delay. Since he did not even know that Sears had failed to report the injury, this failure could not have been one of the considerations that influenced his conduct. Plaintiff first consulted a lawyer some thirteen and one-half months after his 1965 injury. There is no evidence of good cause for delaying even this long in filing, and we do not reach the question of whether there was any legal

excuse for the additional delay of two months after plaintiff consulted a lawyer.

The judgments of the courts below are reversed, and judgment is here rendered that plaintiff take nothing.