**Betty Jo WISHERT, Appellant,**

v.

**SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY, Appellee.**

**No. 16134.**

Court of Civil Appeals of Texas, San Antonio.

Feb. 14, 1979.

Thomas S. Hoekstra, Branton & Mendelsohn, Inc., L. Wayne Scott, San Antonio, for appellant.

Emilio M. Garza, Clemens, Spencer, Welmaker & Finck, San Antonio, for appellee.

OPINION

KLINGEMAN, Justice.

This is a workers' compensation case. Appellant, Betty Jo Wishert, suffered an injury to her right hand on or about March 14, 1972, but did not file a claim for compensation until January 22, 1977,[1] some four years and ten months after the injury. The Industrial Accident Board denied her claim on June 29, 1977, noting that this claim had not been filed within the six-month period required by article 8307, Texas Revised Civil Statutes. Notice of appeal from the administrative determination was given and appellant filed her petition in the District Court of Bexar County, Texas. Appellee, Southern Farm Bureau Casualty Insurance Company, filed a motion for summary judgment asserting that it was entitled to judgment because appellant had failed to file

1. This is the date of filing reflected by the records of the Industrial Accident Board and in the proceedings on the motion for summary judgment. Other references in the transcript and in the briefs assign the date as January 21, 1977.

her claim for compensation within the required six-month statutory period and, as a matter of law, no good cause existed for the failure to file such claim. The trial court granted appellee's motion for summary judgment.

Under the workers' compensation statutes in Texas, compensation is barred if the filing of the claim is not made within six months from the date of the injury, unless the claimant has good cause for delay in filing the claim.[2] In relying upon good cause for failure to file within the prescribed statutory period, the claimant is charged with the duty of prosecuting his claim with that degree of diligence which a reasonable prudent person would have exercised under the same or similar circumstances. *Watson v. Texas Indemnity Insurance Co.*, 147 Tex. 40, 210 S.W.2d 989 (1948); *Hawkins v. Safety Casualty Co.*, 146 Tex. 381, 207 S.W.2d 370 (1948); *Hartford Accident & Indemnity Co. v. Hardin*, 252 S.W.2d 752 (Tex.Civ.App.—Fort Worth 1952, writ ref'd).

To satisfy the statutory requirement, it is not enough to prove that good cause for failure to file existed during the six-month period; the injured worker owes a duty of continuing diligence in the prosecution of his claim and must prove that good cause for failure to file continued up to the date of filing. *Texas Casualty Insurance Co. v. Beasley*, 391 S.W.2d 33 (Tex. 1965), *cert. denied*, 382 U.S. 994, 86 S.Ct. 576, 15 L.Ed.2d 480 (1966); *Texas Employers Insurance Ass'n v. Hancox*, 162 Tex. 565, 349 S.W.2d 102 (1961); *Consolidated Casualty Insurance Co. v. Perkins*, 154 Tex. 424, 279 S.W.2d 299 (1955); *Petroleum Casualty Co. v. Dean*, 132 Tex. 320, 122 S.W.2d 1053 (1939); *Williamson v. Texas Indemnity Insurance Co.*, 127 Tex. 71, 90 S.W.2d 1088 (1936). Although the question of whether the claimant used the degree of diligence required is ordinarily one of fact, the evidence in a particular case may point to a lack of diligence on the part of the claimant as the only reasonable conclusion, in which event the question is to be decided as a matter of law. *Texas Casualty Insurance Co. v. Beasley*, 391 S.W.2d 33 (Tex.1965), *cert. denied*, 382 U.S. 994, 86 S.Ct. 576, 15 L.Ed.2d 480 (1966); *Hawkins v. Safety Casualty Company*, 146 Tex. 381, 207 S.W.2d 370 (1948).

Appellant in the present case testified by deposition. She stated that the accident for which compensation is sought occurred on March 14, 1972, while she was working at Lone Oak Grocery & Market; that at such time she was performing "custom work"—that is, cutting and wrapping meat according to customer specification—when a fellow employee "wheeled around with [a] package" and struck her, while she was walking toward a freezer, causing her right hand to slam against the back of a meat storage bin; and that the whole backside of the hand hit the wall. She further stated that shortly after the accident, the outside of her right hand was blue and swollen and that, while she could still move the hand, she could only move her fingers slightly. At her employer's suggestion she left work on the day of the accident to see a doctor, but was unable to see Dr. Bachman, her family physician, until the following day. At that time, the doctor X-rayed her hand and reported that he found no broken bones, but told her that she had "torn ligaments." She testified that the entire hand

---

**2.** The statute, which sets forth the requirements for notice of injury and claim for compensation, provides:

Unless the [Texas Employers' Insurance] Association or subscriber have notice of the injury, no proceeding for compensation for injury under this law shall be maintained unless a notice of the injury shall have been given to the Association or subscriber within thirty (30) days after the happening of an injury or the first distinct manifestation of an occupational disease, and unless a claim for compensation with respect to such injury shall have been made within six (6) months after the occurrence of the injury or of the first distinct manifestation of an occupational disease; . . . For good cause the [Industrial Accident] Board may, in meritorious cases, waive the strict compliance with the foregoing limitations as to notice, and the filing of the claim before the Board. Tex.Rev.Civ.Stat.Ann. art. 8307, § 4a (Vernon 1967).

hurt—the backside, the inside, and the fingers. She went to see Dr. Bachman several times after the injury and he told her that it was going to take time for the hand to mend. He suggested that she start back to work gradually. After a consultation or two, Dr. Bachman referred her to Dr. Wolfe, to check the continued swelling of the hand. The visit to Dr. Wolfe took place more than a week after the accident. Dr. Wolfe also X-rayed the hand and told the appellant that her hand would be "fine" and that she should return to work. He further advised that she should "take it easy" and "would have no more trouble with [her] hand." She saw Dr. Bachman one more time shortly thereafter and he told her it was "all right to go back to work" and that she "would definitely not have any more problems with [her] hand." It was after this visit that he released her from his care.

Further testimony revealed that after the doctor had released her she returned to work at Lone Oak Grocery for a few days, but could not carry packages or trays of meat, as she was required to do in her job. She left her employment there because "it was just too hard on me to do it." She testified that during the period from March, 1972, until May or June 1972, she received disability benefit payments, but was sent no benefits thereafter.

She further testified that on one occasion following the accident, while she was still working at Lone Oak Grocery, one of the store owners there told her that she wanted appellant "to talk to the insurance man" who happened to be at the store that day. As requested, appellant spoke with the insurance representative, who asked about her hand and told her to follow the doctor's advice. The "insurance man" told her that he would take care of everything for her and further stated that if she needed anything to call him, and that he would do everything he could to help.

She testified that she next took a job at a drugstore in LaVernia, commencing on or about July 5, 1972, and that she continued to work there until about Christmas of the same year. She stated that she could satisfactorily perform her duties at the drugstore because there was no heavy lifting involved. She stated that sometime in February or March, 1973, she bought a tavern and continued to work in it until January, 1974, when she and her family moved to Yoakum. Appellant did not consult a doctor regarding her hand during the entire period of time after she left Lone Oak Grocery until she moved to Yoakum. When asked if she was still experiencing pain in her hand at such time, she responded that it was "discomforting every once in awhile, especially if [she] crowded it a whole lot and it would swell."

Sometime after she moved to Yoakum early in 1974 she began working at Handy-Stop Grocery, where the only difficulty she encountered in performing her duties was an occasional swelling of her hand. Shortly thereafter she left her employment at Handy-Stop and began working as a checker at another such store on a part-time basis. The only problem she encountered in the latter job was that her "hand would get awfully tired . . . and it would swell." According to her testimony, this was approximately three years after the 1972 accident at Lone Oak Grocery. Thereafter, she went to work for a tannery, but did not work there long because of an allergy to wool. During the time she worked at the tannery her hand "bothered" her, but again, she did not consult a doctor. She quit working at the tannery in April or May, 1976. She stated that about this time she began having difficulty doing housework, including moving of furniture, and that when she would pick up a glass of tea she would drop it. She stated that she started dropping glasses in May, June or July of 1976.

When asked what she did thereafter she stated that she "kept trying to do things," but that the problem continued to the point where she could not sleep at night and her husband urged her to seek the advice of an attorney in Yoakum regarding the matter. The Yoakum attorney referred her to an attorney in San Antonio. During this peri-

od she continued to experience problems with her hand and her arm.

She testified that she went to see the San Antonio attorney and he filed a claim for compensation on the day she first sought his advice, sometime in January, 1977. She testified that shortly after seeing the second attorney she consulted a Dr. Merian in Yoakum who X-rayed her hand and told her he felt it was not treated properly in the first place and that her ligaments were definitely torn.

In addition, she testified that she did not see any other doctor concerning her arm or her hand during the period of time between May, 1972, and the early part of 1977 when she first saw Dr. Merian. She further stated that she never went back to the "insurance man" to give notice of any late developing disability or to file a compensation claim therefor.

By five points of error appellant asserts that the trial court erred (1) in holding that she did not have continuous good cause for the late filing of her claim; (2) in entering judgment for appellee on the basis that appellant did not have continuous good cause for late filing of her claim; (3) in entering summary judgment for appellee since appellant's lack of knowledge created a fact question on the issue of good cause; (4) in entering summary judgment for appellee on the question of good cause since a fact issue existed as to the reasonableness of appellant's belief in the doctor's statement that she would be well and sustain no residual injury; and (5) in entering summary judgment for appellee on the question of good cause because a fact question existed as to whether an agent or employee of appellant's employer or of appellee represented to appellant that a compensation claim had been filed in her behalf.

■ With regard to appellant's contention that good cause existed for the late filing due to her reliance on the alleged statement by her employer that a compensation claim would be filed on her behalf, the applicable law is set forth by the Supreme Court in *Allstate Insurance Company v. King*, 444 S.W.2d 602 (Tex.1969), where the Court found that:

> there is evidence to support the jury's finding that plaintiff reasonably believed his employer would process and handle his insurance claims for injuries. Under the facts of the present case, however, this belief could not constitute good cause for the delay of almost sixteen months in filing his claim . . . A person of ordinary prudence would not remain totally inactive and unconcerned about his rights as long as plaintiff did in sole reliance upon the employer's promise to file a claim.

*Id.* at 604–05. *See also Consolidated Casualty Insurance Co. v. Perkins*, 154 Tex. 424, 279 S.W.2d 299 (1955); *Phariss v. Texas Employers Insurance Ass'n*, 290 S.W.2d 289 (Tex.Civ.App.—Dallas 1956, no writ); *New Amsterdam Casualty Co. v. Keller*, 62 S.W.2d 637 (Tex.Civ.App.—Fort Worth 1933, writ dism'd).

Appellant contends further that she relied on statements by her doctor that her injury was not of a serious nature, as well as representations that she would have no residual injury. The pertinent testimony has been hereinabove set forth. There are decisions involving either the situation where an employee has been told by his employer that he will take care of the injured person's claim, or where the injured person has relied on statements by his doctor that the injury is not of a serious nature. Either situation would excuse a reasonable delay in filing the required claim.[3] In our opinion, the Supreme Court decisions in *Texas Casualty Insurance Company v. Beasley*, 391 S.W.2d 33 (Tex.1965) and *Texas Employers' Insurance Association v. Brantley*, 402 S.W.2d 140 (Tex.1966) are controlling here.

*Beasley* involved statements made to the injured person by a doctor as to his condition. The claim was not filed until nineteen months after the date of the injury. The Court assumed, without deciding, that good cause for failure to file existed until Beas-

3. Most of these cases have involved a total delay of approximately two years.

ley was hospitalized in July, 1962. He did not file his claim until November, 1962, a period of approximately four months thereafter. The Court held as a matter of law that the claimant did not exercise the degree of diligence in the filing of his claim which a reasonable and prudent person would have exercised under the same or similar circumstances and that as a matter of law no good cause existed.

*Brantley* addressed a situation where the claimant testified that he did not believe he had a serious injury, and where the doctor told him that it was a strain and that his condition would improve. The injury occurred in February, 1958, but Brantley did not file his claim for benefits until July, 1960, some two years and four months after the injury. Again, as in *Beasley*, the Supreme Court assumed, without deciding, that good cause existed until Brantley's hernia "completely broke down" around April, 1960. He did not file his claim for compensation benefits until July 7, 1960, a period of slightly in excess of three months thereafter, which was held under these circumstances to be too long a time for a person who is both reasonable and prudent to stand by and do nothing about filing a claim for compensation benefits and that no good cause existed as a matter of law.

In this case before us claimant was injured on March 14, 1972, but failed to file her claim until January 22, 1977, a period of approximately four years and ten months. Assuming, without deciding, that good cause existed until the end of July, 1976, appellant still did not file her claim until January 22, 1977, a period of almost six months.[4]

Although the doctors, upon whose advice appellant asserts she relied, told her shortly after the accident that her hand would be "fine," in actuality she continued for a period in excess of four years thereafter to have problems with her hand, including

pain and swelling and an inability to pick up articles in connection with her several jobs. During this entire period of time she never consulted a doctor about her hand or contacted appellee. In May, June, or July, 1976, she began experiencing additional difficulties with her hand, which resulted in increased pain and swelling, the dropping of glasses, inability to move certain household furniture, and trouble sleeping at night. Despite all this, she failed to file her claim until January 22, 1977, a period of almost six months.

We hold that the evidence in this case shows as a matter of law that appellant did not exercise the degree of diligence in the filing of her claim for compensation which a reasonable prudent person would have exercised under the same or similar circumstances. Therefore, no good cause existed to justify the claimant's delaying the filing of her claim until January 22, 1977.

The judgment of the trial court is affirmed.

---

4. In *Baker v. Travelers Insurance Co.*, 483 S.W.2d 10 (Tex.Civ.App.—Houston [14th Dist.] 1972, no writ), a mentally incompetent person failed to file her claim for seven years. The court agreed that her mental incapacity was a sufficient cause for her not filing her claim during this period, but held that failure to file her claim for a period of almost five months after removal of her mental incapacity was too long as a matter of law and affirmed a summary judgment against the claimant.